BUFFALO PITTS CO. et al. v. ALDERDICE.
(No. 7225.)

(Court of Civil Appeals of Texas. Dallas. May 29, 1915. Rehearing Denied June 26, 1915.)

1. CONTRACTS ⬥324—REMEDIES FOR BREACH —STIPULATIONS.
　Where parties to a contract agree on the remedies accruing on a breach thereof, the agreed remedies are exclusive.
　[Ed. Note.—For other cases, see Contracts, Cent. Dig. §§ 1549–1557; Dec. Dig. ⬥324.]

2. SALES ⬥261, 273 — CONTRACT — WARRANTIES—IMPLIED WARRANTY.
　A contract for the sale of an engine, which provides that on its failure to meet the warranty, if it cannot be made to do so by experts, the buyer shall return it, whereon the seller may either furnish another' engine or rescind the contract by return of the price, and which stipulates for notices by the buyer to the seller, or the right to return and receive the price will be waived, and which declares, "This is a secondhand engine, and has been used about 30 days, and is guaranteed in first-class condition," and which concludes, "This warranty does not

cover belting, nor secondhand machinery sold," does not, when considered as a whole, stipulate for an express warranty and an exclusive remedy for breach of contract; and where the buyer had not seen the engine at the time of the making of the contract, but relied on the seller's representations, the seller impliedly warranted that the engine was reasonably fit for the purpose for which the buyer purchased it with knowledge of the seller, and was of the kind and quality represented.
　[Ed. Note.—For other cases, see Sales, Cent. Dig. §§ 727–735, 772–776; Dec. Dig. ⬥261, 273.]

3. SALES ⬥418—CONTRACTS—DAMAGES.
　A contract for the sale of a threshing outfit called for a new feeding attachment. The feeder delivered was secondhand, and the buyer refused to accept the outfit. Thereafter the parties made a supplemental contract, whereby the seller agreed to furnish a wheel for the thresher and a new feeder, and "to put same on and be responsible for any damages caused by delays in placing" the same on the thresher. The buyer was delayed while operating the thresher because of defects in the secondhand feeder. Held, that the buyer could recover for the loss sustained, for the quoted terms in the supplemental contract meant all delays from the time of the execution of the supplemental contract until the parts called for thereby were actually placed on the machine.
　[Ed. Note.—For other cases, see Sales, Cent. Dig. §§ 1174–1201; Dec. Dig. ⬥418.]

4. PRINCIPAL AND AGENT ⬥136—CONTRACTS MADE BY AGENT—LIABILITY OF AGENT.
　One acting as agent of its disclosed and known principal in making a sale is not liable to the buyer for breach of contract.
　[Ed. Note.—For other cases, see Principal and Agent, Cent. Dig. §§ 447–450, 476–491; Dec. Dig. ⬥136.]

Appeal from District Court, Ellis County; F. L. Hawkins, Judge.

Action by J. M. Alderdice against the Buffalo Pitts Company and another. From a judgment for plaintiff, defendants appeal. Reversed in part, and affirmed in part.

Will Hancock and Supple & Harding, all of Waxahachie, for appellants. Farrar & McRae, of Waxahachie, for appellee.

RASBURY, J. April 15, 1912, appellant Buffalo Pitts Company and appellee entered into a written contract by which appellant sold to appellee, and appellee purchased from appellant, certain threshing machinery, an enumeration of which is unnecessary, save that among the machinery so sold was a feeder. By the contract appellant Buffalo Pitts Company warranted that the machinery should be "of good material, well constructed, and, with proper use and management, capable of doing well the work for which the machines respectively are made and sold." As part of the warranty quoted it was further agreed, if any "parts" of the machinery after six days' use should fail to meet the warranty in any respect, that the appellee should give appellant immediate written notice thereof at appellant's home office in Buffalo, N. Y., by registered letter, stating particularly the parts that failed to meet the

---

⬥For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

warranty and wherein, and ·allow the appellant a reasonable time to get the machine or "part" with a skilled workman and remedy the defect, etc. Other provisions in the contract required further and telegraphic notice if the skilled workman failed to correct the defect, and provided for additional time for another expert; also provided that in case of the failure of second expert to cure the trouble the "part" was to be returned to the agency delivering same, whereupon appellant had the option of either furnishing another machine or "part" or of rescinding the contract by a return of the money or notes given in payment thereof, and thereby be released from all further liability. It was also stipulated in the contract that failure to give the written notices enumerated should be a waiver of the warranty and a release of appellant thereon, without in any manner affecting the liability of appellee. On the same day that the contract just outlined was entered into, another contract between appellee and appellant Buffalo Pitts Company was also entered into, by which appellant sold to appellee a single cylinder traction engine for the agreed price of $700. Said contract was similar in all respects to the one outlined above, being, as was the first one, appellant's printed form of contract, save that there was inserted in the last contract the following:

"This is a secondhand engine, and has been used about 30 days, and is guaranteed to be in first-class condition in every respect."

Both contracts also contained the following concluding provision, printed in comparatively large type:

"This warranty does not cover belting nor secondhand machinery sold."

September 12, 1912, appellee commenced this suit against appellant Buffalo Pitts Company, a corporation, and against appellant F. S. Cronk Company, also a corporation. The suit, for the purpose of this appeal, was to recover of appellant Buffalo Pitts Company certain damages, the alleged difference in value of the engine in the condition in which it was when delivered to appellee and what would have been its value had it been in the condition it was represented to be when it was sold to appellee; also to recover of both Buffalo Pitts Company and F. S. Cronk Company for the loss in operating expenses which appellee suffered due to the failure of the feeder to comply with the warranty. Other items of damage were sued for, but reference thereto is unnecessary, since there was no recovery.

Appellant Buffalo Pitts Company by way of defense pleaded the provisions of the agreement, which we have detailed, and appellee's failure to comply with them, particularly in giving the notice required therein, and, being bound thereby, had, as a consequence, waived all damages. Appellant F. S. Cronk Company pleaded the general denial, and specially that it was not liable for the damages sought to be recovered, because in the transactions relied on by appellee it was acting only as selling agent for appellant Buffalo Pitts Company.

There was a trial before the district judge without a jury, resulting in a judgment for appellee against Buffalo Pitts Company for $250, the difference in value between the engine agreed to be delivered to appellee and the one actually delivered, and judgment for appellee against both Buffalo Pitts Company and F. S. Cronk Company for $275, the amount lost by appellee in running expenses on account of the feeder being defective. From such judgment, both Buffalo Pitts Company and the F. S. Cronk Company have appealed.

All the facts necessary to a disposition of the case are contained in the conclusions of fact of the district judge, in reference to which no claim is made that the findings are not supported by the evidence, or that any fact, so supported and material to appellant's defense, has been omitted. Accordingly we adopt them. They are as follows:

"First. That during the spring of 1912 J. M. Alderdice was desirous of purchasing a threshing outfit, consisting of a traction engine to operate the thresher and separator and feeder and other machinery incident to a full threshing outfit, and was for some time, through the authorized agents of the Buffalo Pitts Company, negotiating with them for such machinery.

"Second. That R. B. George was at said time the state agent and state manager for the state of Texas of the Buffalo Pitts Company, and that F. S. Cronk Company was at that time the local agent at Waxahachie for the Buffalo Pitts Company, and that R. H. Fincher was the acting agent for said F. S. Cronk Company.

"Third. That a number of propositions pro and con were submitted by the Buffalo Pitts Company through said agents to said plaintiff, and counter propositions submitted by the plaintiff to them, and that finally a trade was consummated by which the plaintiff became the purchaser of a secondhand traction engine and of a separator and feeder, all of which are described and mentioned in the contracts hereinafter referred to.

"Fourth. That R. B. George represented to the plaintiff that the engine in question had been run about 30 days and was as good as new, and that at the time that the contract hereafter referred to was written there was included in the contract a statement that 'said engine was a secondhand engine and had been used about 30 days and is guaranteed to be in first-class condition in every respect.'

"Fifth. That J. M. Alderdice, the plaintiff, never saw the engine in question until it arrived in Waxahachie on board the cars; that the representations made by said George, and there included in said contract, were material representations; and that said Alderdice relied upon them and purchased the engine upon' said representations and guaranty.

"Sixth. That said representations were untrue, and that the said engine was not in first-class condition and was not as good as new.

"Seventh. That the difference in the value of said engine in the condition in which it was at the time it was delivered to plaintiff and what its value would have been, had it been in the condition it was so represented to be, was $250.

"Eighth. That during the negotiations between the plaintiff and the agents of the defendant Buffalo Pitts Company, and in the discussion between them as to the character of the feeder the plaintiff desired, it was understood

that he was to have a new Ruth feeder, and that it was to be of the same kind that one John Shannon had upon his separator. The contract as signed by the parties does not describe the kind of feeder, but it was understood between them the feeder was to be of the character heretofore mentioned. At the time the machinery arrived at Waxahachie, the feeder upon the separator was of the kind that John Shannon had upon his separator, but was found not to be a new feeder, and F. S. Cronk Company, through R. H. Fincher, undertook to have the matter adjusted, and undertook to get for the plaintiff a new feeder of the kind he had purchased. Plaintiff declined · to accept the outfit with the secondhand feeder on it, and in the negotiations between him and F. S. Cronk Company, through R. H. Fincher, plaintiff finally agreed to take the threshing outfit with the feeder which was on it at that time, and use the same until the new feeder could be secured and placed on the machine; the said F. S. Cronk Company, as agent of the Buffalo Pitts Company, acting through said R. H. Fincher, executing at the time the supplemental contract."

ɷ We interpolate at this point the contract referred to, which is as follows:

"June 18, 1912.

"The Buffalo Pitts Company agree to furnish free of cost one rear wheel for thresher bought from them by J. M. Alderdice 6/17/12; also to furnish a new feeder for the thresher mentioned and to put same on and be responsible for any damage caused by delays in placing these on thresher.

"Buffalo Pitts Co., by F. S. Cronk Co., Agts."

"Ninth. After this supplemental contract was executed, the plaintiff took the separator and the other machinery and proceeded to do custom threshing therewith. It was known by said R. H. Fincher that this was the purpose for which plaintiff was buying the machinery, and the said Fincher knew also about the capacity of said machine per day and the price received for such work. That the feeder which was on the machine at the time it was taken out by the plaintiff never operated successfully and gave plaintiff considerable trouble, breaking down and giving way in first one particular and another. That the defendant Buffalo Pitts Company undertook to furnish plaintiff with a new feeder, and shipped one to Waxahachie, which was taken out by R. H. Fincher, or parties under his direction, to be placed upon the separator, but was found to be too small and that the same would not fit, after which they put the old feeder, which was on the machine at first, back on again, and undertook to secure a new feeder therefor, which they eventually did, and placed it on the machine. This last feeder placed upon the machine was not the same pattern as the feeder upon John Shannon's machine, but seemed to have given satisfaction, and they had no further trouble with the feeder after the last one was so placed upon the separator.

"Tenth. That the time lost by the plaintiff on account of the feeder was 5½ days, and that plaintiff's damages during such time, or loss in his expenses running on, was $50 per day, or a total of $275.

"Eleventh. That the actual time lost by the plaintiff while they were actually working in undertaking to place the first feeder that arrived after the delivery of the machine was three-fourths of a day, and that the time lost while they were placing the last feeder upon the machine was one-fourth of a day, making a whole day that was lost during the time they were actually working and undertaking to place the feeders on the machine.

"Twelfth. The court finds that the plaintiff would not accept the machine with the first feeder on it until he was protected by· the execution of the supplemental contract, which has been hereinbefore indicated.

"Thirteenth. The court finds that the oat crop for the season of 1912 was exceptionally good, and that this was known by R. H. Fincher, who also knew that plaintiff was buying this machinery to do custom threshing, and that the machine could thresh 3,500 bushels per day, and that the plaintiff received 6 cents per bushel for threshing the grain.

"Fourteenth. The court further finds that no notice was given by the plaintiff, as called for in the contracts, in writing, but that the notices were made verbally to R. H. Fincher, who was acting for the F. S. Cronk Company, and by them communicated to the Houston office of the Buffalo Pitts Company, and that they acted upon said notices, and sent one McCracken from Houston to work upon the feeder which was giving the trouble, and that thereby the defendant company waived the notices which were required by the contracts to be given."

[1, 2] The first and second assignments of error challenge the right of the trial judge to allow damages for the difference in value of the engine sold and the one delivered, because by the contract between the parties they had agreed upon another and exclusive remedy in case the engine did not meet the warranty. The contract does provide, as we have shown, that in the event the machinery described therein should fail to meet the warranty, and could not be made to do so by experts, the purchaser should return same to the delivering agency, whereupon the seller could either furnish another machine or rescind the contract by a return of the purchase price, and thereby be released from any liability whatever. However, before the purchaser might return the machinery and receive other similar machinery, or a return of the purchase money, he was required by the contract to give certain written notice to the seller; otherwise, the right to return the machinery and receive the purchase price was waived. The remedy thus provided for on behalf of the purchaser is exclusive of all other remedies. Appellee did not give the notice to appellant stipulated for in the contract, nor was the engine returned to the delivering agency and an opportunity to rescind afforded appellant. Consequently, if the warranty and stipulations for notice and other provisions of the contract in that respect apply in this case, the judgment of the court was erroneous, since it has uniformly been ruled that, when the parties to a contract agree upon the remedies that shall accrue in case of breach thereof, such agreed remedies are exclusive of all others. Aultman & Co. v. York, 1 Tex. Civ. App. 484, 20 S. W. 851; Aultman v. McKinney, 26 S. W. 267; Case Threshing Machine Co. v. Hall, 32 Tex. Civ. App. 214, 73 S. W. 835; Shearer v. Gaar-Scott Co., 41 Tex. Civ. App. 39, 90 S. W. 684; Gaar-Scott Co. v. Hodges (Ky.) 90 S. W. 580; Oltmanns Bros. v. Poland, 142 S. W. 655; Fetzer v. Haralson, 147 S. W. 295.

We conclude, however, that by other and. special provisions of the contract the warranty, the remedy for a breach thereof, and.

the procedure to be followed in order to be entitled to the remedy, clearly have no application to the contract covering the sale of the engine. The contracts in the record are a general form used by Buffalo Pitts Company, with blank lines at certain places therein for use in case it is desired to insert special provisions. In one of these blank places in the contract is written, as stated at another place herein, the provision that the engine is a secondhand one. By the concluding paragraph of the contract it is declared that the warranty does not "cover * * * secondhand machinery"; such provision being emphasized and notice being directed thereto by printing same in comparatively large type. With these two special provisions in the contract, it does not require argument or discussion to establish the claim made that the warranty does. not apply to the engine. There being no warranty, it is equally clear that the notice required and the remedy agreed upon by the parties also have no application, and that the notice and the remedy has reference solely to the warranty in the contract, and no other, we think clear. Such conclusion is supported both by the language used and its context. All the provisions of the contract dealing with both the warranty, the remedy, and the procedure appear. in one clause thereof. This clause, after reciting the warranty, further provides in effect that such warranty shall be enforce-.able in the event the provisions with reference to notice shall be given and an opportunity afforded to cure defects, etc., in the machine, failing in which it shall be returned and the contract rescinded by placing the purchaser in statu quo. We therefore conclude that the contract as relates to the engine provides neither warranty, remedy, nor procedure to obtain same.

The warranty being thus expressly withdrawn, an inspection of the contract discloses therein no other provision, express or otherwise, governing the parties in the absence of warranty. In such cases there are at least two well-defined rules—the first being the much-relaxed rule of caveat emptor, which has no application, for the reason ·that the court found as a fact that appellee never saw the engine until it arrived in Waxahachie, and as a consequence had no opportunity to exercise his own judgment in respect thereto, but relied upon the representations of appellant in that respect, who knew the purpose for which the engine was purchased; and, second, the rule of implied warranty, which in the absence of an express warranty projects into the contract by implication the agreement on the part of the seller that the article sold is reasonably fit for the desired purpose and is of the kind and quality represented. Houston Cotton Oil Co. v. Trammell, 72 S. W. 244, and cases ·cited; Houk v. Berg et al., 105 S. W. 1176, and cases cited. It was by authority of the rule last stated that the judgment was en-

tered; and the finding of the court that appellee never saw the engine until it was delivered, and that before purchasing same appellant's general agent represented it to be in first-class condition and as good as new, which representation was untrue, but which was relied upon by appellee, is sufficient, under the rule to support the judgment.

[3] The third assignment of error challenges the action of the court in allowing appellee $275 damages for loss of time caused by defective feeder. As will appear from the court's findings, when the machinery arrived the feeder attachment was a secondhand one; whereas, the contract called for a new one. Learning that the feeder was secondhand, appellee declined to accept the outfit as a whole. At the request of F. S. Cronk Company, selling agents of Buffalo Pitts Company, appellee finally agreed to use the secondhand feeder until a new one could be obtained, in consideration of the execution by appellant F. S. Cronk Company, on behalf of Buffalo Pitts Company, of what is termed the "supplemental" contract, and included by us in the court's findings of fact. The secondhand feeder, however, did not operate successfully, breaking down and giving way in first one particular and then another. Finally appellant Buffalo Pitts Company shipped a new feeder to Waxahachie, but when it was placed upon the machinery it was found to be too small. Thereupon the old feeder was replaced thereon. While operating with this feeder, and before another and a different type of feeder, which did operate successfully, could arrive, appellee lost 5½ days' time, due to the imperfections of the secondhand feeder, at a cost, in actual expense, of $50 per day.

Appellant's precise contention is that appellee could only recover for the time lost in attaching the feeder to the separator or on the outfit. In this respect the court found as a fact that the time lost in removing the secondhand feeder from the machine or replacing it thereon was one full day. The other time lost was due to the breaking down of the secondhand feeder from first one cause or another. An inspection of the contract shows that it involves two matters: First, an agreement to furnish a new feeder and wheel for the thresher; and, second, to pay all damages "caused by delays in placing these on thresher." We think it clear that by the quoted words it was not meant to pay only for the time lost while actually attaching the wheel and feeder to the machinery, but to reimburse appellee for all time lost from the date of the supplemental contract until the new feeder and the wheel could be gotten to Waxahachie and placed upon the machine. When it is considered that the court found as a fact that appellee would not accept the secondhand feeder until protected by the supplemental contract, and that the very breakdowns and delays that appellee evidently anticipated did occur while

in the midst of the harvest season, it is fair and reasonable to conclude that the expression "delays in placing these on the thresher" meant all delays from the time of the execution of the supplemental contract until the parts were actually placed on the machine, since the time lost in getting the parts to the thresher was delay just as surely as was the time lost in attaching them to the machinery. The thing to be done was to place the parts on the thresher and to pay all damages resulting from delay in that respect, however caused. Any other construction would lead to unreasonable results, since by the construction sought to be placed upon the contract appellant could have delayed until another harvest, and yet been liable only for the delay in actually attaching same to the other machinery.

[4] The fourth assignment of error is that the evidence does not support the finding of the court that appellee was entitled to recover the 5½ days' lost time. It is urged that it does not support such judgment against appellant Cronk Company, because it appears from the evidence that Cronk Company, in all the transactions relating to the purchase of the machinery, was acting as the agent of its disclosed and known principal. Without detailing the pleading and the evidence on this question, we conclude that it does sustain appellant Cronk Company's contention in that respect, and that the judgment as to Cronk Company is erroneous. It is also urged, under said fourth assignment, that the evidence does not support the judgment for lost time against Buffalo Pitts Company, because it is liable at most for the time actually consumed in placing the parts on the machinery. This claim involves in another way the construction which ought to be placed upon the supplemental contract, and which we have decided adversely to appellant's contention.

The judgment of the trial court as to appellant F. S. Cronk Company is reversed, and judgment here rendered for said appellant. In all other respects, the judgment of the trial court is affirmed.