DETROIT AUTOMATIC SCALE CO. v. G. B. R. SMITH MILLING CO. (No. 8282.)

(Court of Civil Appeals of Texas. Dallas. Nov. 22, 1919. Rehearing Denied Dec. 20, 1919.)

1. SALES �kö═267—EXCLUSION OF IMPLIED BY EXPRESS WARRANTY; "DEFECTIVE."

A mere agreement by seller to repair free of charge if the scale sold proved defective in two years under ordinary use was not such an express warranty as to exclude an implied warranty of quality and fitness, "defective" meaning a defect or flaw, imperfect, incomplete, lacking, faulty, and referring, as used in the agreement, to a lack or absence of something essential to a complete scale, as a part of the mechanism, or to some part of the machinery imperfectly or incompletely molded or cast, as distinguished from any warranty or representation concerning the material out of which the scale was constructed or its ability to perform the service for which sold.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Defective.]

2. SALES ⊫═273(3)—IMPLIED WARRANTY OF FITNESS.

Where the seller knew the purpose for which the buyer desired to use the flour mill scales sold, the scales were impliedly warranted to be reasonably fit for or adapted to that purpose.

3. SALES ⊫═273(5)—EFFECT ON IMPLIED WARRANTY OF FITNESS OF SELECTION OF GOODS BY BUYER.

The failure of flour mill scales to weigh accurately or meet the government test in that respect rendered the seller thereof liable on an implied warranty of fitness, notwithstanding the scales were ordered by particular number and name.

4. EVIDENCE ⊫═434(11)—PAROL EVIDENCE; FALSE REPRESENTATIONS INDUCING ENTERING INTO CONTRACT.

Where flour mill scales sale contract provided that it contained all agreements and that "no representation made by an agent or other person, not included herein, shall be binding," the parol evidence rule did not render inadmissible evidence that the seller's agent represented that its scales were accurate and peculiarly fitted for weighing flour in the buyer's mill, whereas the scales as purchased were inaccurate, such evidence showing a false representation inducing the buyer to purchase.

Appeal from Dallas County Court; W. L. Thornton, Judge.

Action by the Detroit Automatic Scale Company against the G. B. R. Smith Milling Company. From judgment for defendant, plaintiff appeals. Affirmed.

Seay, Seay & Malone and William Lipscomb, all of Dallas, for appellant.

Burgess, Burgess, Christman & Brundidge, of Dallas, for appellee.

RASBURY, J. Appellant sued appellee to recover the price of four flour mill scales delivered to appellee under written contract of sale and purchase entered into between the parties and for which appellee refused payment. Appellee denied liability on the ground of failure of consideration, in that appellant represented that said scales would weigh accurately and give satisfactory service when installed in the concrete mill building in course of construction at the time the parties entered into the contract, and that due to such representations, which were false and made for the purpose of misleading, and which did mislead, defendant, the contract was entered into; but that the scales when received and installed failed to perform satisfactorily or weigh accurately and were wholly worthless for the purpose for which they were bought. There was a trial to jury to whom, at the conclusion of the evidence, the court submitted one fact issue as follows:

"Were the No. 72 automatic scales involved in this suit fit and suitable for the use and purpose for which they were manufactured and sold by the plaintiff to the defendant?"

The jury replied, "No." Upon the finding judgment was for appellee.

[1, 2] Appellant contends that the contract sued on contains an express warranty, with which appellant in all respects complied, and, it further appearing that appellee had refused to pay the price agreed on, it was entitled to verdict, and that the court erred in refusing it a peremptory instruction.

The contention is predicated upon the following clause of the contract:

"Should said scale prove defective within two years from date of shipment with ordinary use (not dropped or broken), the Detroit Automatic Scale Company agrees, if properly notified, to repair same free of charge. * * *"

Assuming that appellant did, in all respects, comply with the provisions of the clause just quoted, we are nevertheless of the opinion that the language does not constitute an express warranty so as to relieve appellant from all further responsibility. "Warranty" is said to be an express or implied agreement "by which the seller undertakes to vouch for the title, quality or condition of the thing sold." Vol. 2 Mechem, Sales, § 1222. "Warranties usually go to the quality, quantity, capacity, condition, (or) fitness of property for the purposes for which it is sold. * * *" Simkins, Contracts and Sales, 912, and citation. Simply stated the clause of the contract relied upon as fixing the extent of appellant's liability declares that appellant will repair free of charge any defect in the scale which develops in two years under ordinary use. "Defective" means a defect or flaw; imperfect, incomplete, lacking, faulty (Century Dictionary)—referring, as used in the contract, in our opinion, to a lack or absence of something essential to a complete scale, as for instance one or more of the parts that enter into the mechanism, as a whole, or to some part of the machinery imperfectly or incompletely moulded or cast, as distinguished from any warranty or representation concerning the material out of which the scale was constructed or its ability to perform the service for which it was sold.

One of the cases upon which counsel rely and which is typical of the others cited is J. I. Case Threshing Machine Co. v. Hall, 32 Tex. Civ. App. 214, 73 S. W. 835. In that case the facts disclose that the seller warranted in writing that the machine was of good material and if properly operated would perform well the work for which it was sold, and, in addition, provided the remedies the parties were to follow before there could be a rescission if the machine failed to meet the warranty. The case is at once distinguishable from the one at bar in the fact that in the former there is undeniably an express warranty as to quality and fitness, while in the latter there is merely an agreement to repair any defects which may develop within two years under ordinary use. There being then an absence of any express warranty, and appellant knowing the purpose for which appellee desired to use the scale, which is not denied and which the evidence amply supports, there arose by implication of law the agreement on the part of appellant that the scales were reasonably fit for or adapted to the purpose for which they were sold. Buffalo Pitts Co. v. Alderdice, 177 S. W. 1044, and citations.

[3] However, in that respect the appellant further contends that when a known and described article, to wit, four No. 72 flour mill scales, manufactured by the Detroit Automatic Scale Company, is purchased, there is, in the absence of an express warranty, no implied warranty as to quality and fitness, merely the duty to deliver the precise article furnished, and that, appellant having delivered the articles described, it was entitled to instructed verdict. In support of the contention stated, appellant relies on Seitz v. Brewers' Refrigerating Machine Co., 141 U. S. 510, 12 Sup. Ct. 46, 35 L. Ed. 837. In that case the machine company sold Seitz a No. 2 size refrigerating machine as constructed by it. No warranty was contained in the contract. Payment for the refrigerator was refused and suit resulted. On trial Seitz adduced evidence tending to show that he was induced to purchase the machine and sign the contract by the fraud of the machine company's agents who represented in substance that the machine would cool the rooms of the brewery, or 150,000 cubic feet of atmosphere, to 40 degrees Fahrenheit. In holding that the rule of law that implies the undertaking that the article sold for a specific purpose and to be used in a particular way is reasonably fit and proper for the purpose for which it was sold did not apply, the court say:

"The machine purchased was specifically designated in the contract, and the machine so designated was delivered, put up, and put in operation in the brewery. The only implication in regard to it was that it would perform the work the described machine was made to do. * * *"

That is to say, as we interpret the decision, that the machine would refrigerate, not that it would cool Seitz' brewery to a certain degree, in fact the court say:

"There was no express warranty that the machine would cool 150,000 cubic feet of atmosphere to 40 degrees Fahrenheit or any other temperature, without reference to the construction of the particular brewery or other surrounding circumstances."

It was not denied, the court say at another point in its opinion, that the machine worked and operated as a refrigerating machine should. That statement, in our opinion, marks the difference in the two cases. In the case cited the machine would operate as a refrigerating machine should. In the case at bar the scales would not correctly register weight. The evidence, which we have not quoted because its sufficiency is not denied, shows that the scales would not weigh accurately nor meet the government test in that respect,

and that appellant's agents were unable to correct them. One of the witnesses for appellee relates that between 400 and 500 sacks of meal, when re-weighed on government tested scales, were found short between 300 and 400 pounds.

[4] In the contract of sale is a provision that it contains all agreements concerning the scales and "that no representations made by an agent or any other person, not included herein, shall be binding." Over objection of appellant, counsel for appellee elicited from Hollingsworth, the sales agent of appellant, the admission that he did represent to appellee, in order to induce appellee to purchase the scales, that the scales were so accurate they would save him flour; and to elicit from a witness of appellee that Hollingsworth represented that they would save money by saving time in weighing the output, in that they operated faster and easier, and would save flour in that the scales weighed more correctly and minutely than other types of scales. The contention is that such testimony was inadmissible because it tended to vary the terms of the written contract. That the contention states an elementary proposition of law will hardly be denied. Appellee alleged, however, that the representations were false and made for the purpose of and did induce appellee to purchase the scales and enter into the contract. In such cases the rule is without application.

"If a party were denied the right to show facts which prevent a writing from constituting a contract, such a writing would be free from all defenses, and outside of all rules which determine the validity of contracts." U. S. Gypsum Co. v. Shields, 106 S. W. 724.

Of course, there remains the question of whether such representations constitute fraud. What constitutes fraud is difficult of definition. It was said by another that it is "part of the equity doctrine not to define it, not to lay down any rule as to the nature of it, lest the craft of men should find ways of" escaping "the limits of such rule or definition." The representation to constitute fraud must be an affirmative statement of some material fact upon which the other party relied and because of which he was induced to make the contract. In the case last cited Shields had a contract to erect certain buildings for the government, and it was represented to him by the seller of a certain type of plaster that a government official had said that such material would be required in the construction of the building, upon which the purchaser relied, and which was held, upon proof that the government did not require the use of such material, to avoid the contract on the ground of fraud. The proof in the present case is that appellant's agent represented that its scales were accurate and peculiarly fitted for the weighing of flour in appellee's mill, whereas the proof for appellee shows that they were inaccurate, did not register correct weight, nor meet the government test for correctness. That the facts show a misrepresentation of a material fact upon which appellee relied we believe will hardly be denied.

The second assignment of error is not discussed because disposed of by our holding on the issue presented by the first assignment.

The fourth assignment is overruled without discussion because, in our opinion, it was proper to prove that appellant was informed of and knew the condition of the place where it was proposed to install and operate the scales, since the evidence tends to show that the vibration of the building affected the adjustment and accuracy of the scales.

The judgment is affirmed.