**SOUTHWESTERN DRUG CORPORATION et al. v. TAYLOR.**

No. 12922.

Court of Civil Appeals of Texas.
Fort Worth.

March 19, 1937.

Rehearing Denied April 16, 1937.

Rice M. Tilley and Phillip Tocker, both of Fort Worth, for appellant Southwestern Drug Corp.

McGown & McGown, H. L. Logan, Jr., and B. E. Godfrey, all of Fort Worth, for appellant P. M. Bratten Co.

Worsham, Burford, Ryburn & Hincks, of Dallas, and Bryan & Maxwell and Stansell Bryan, all of Waco, for appellant Texas Power & Light Co.

M. Hendricks Brown and Marvin H. Brown, both of Fort Worth, for appellee.

SPEER, Justice.

H. K. Taylor, Jr., sued the Southwestern Drug Corporation, P. M. Bratten Company, and the Texas Power & Light Company, all corporations, in the Forty-eighth district court of Tarrant county. Plaintiff recovered judgment, and defendants have appealed. For brevity, we shall refer to the Southwestern Drug Corporation as the Drug Company, P. M. Bratten Company as Bratten, and the Texas Power & Light Company as the Light Company.

Appellee's cause of action was based upon allegations that he was inexperienced in the manufacture of ice cream and similar products, but desired to enter into such a business in the city of Waco, Tex.; that he went to appellant Drug Company and informed its representative of his ignorance of the type of machinery necessary for the business and disclosed his entire plan to the representative; that the latter advised him he would need a compressor, a freezer and hardening cabinet, and a serving cabinet; that this representative told appellee the Drug Company could sell him the freezer and hardening cabinet; that his company recommended a Frigidaire compressor and equipment with their Sani-speed freezer and hardening cabinet; and that appellant Bratten Company handled the equipment recommended.

Allegations were made that the representative of the Drug Company went with appellee to Bratten and that said representative informed Bratten of appellee's plans, and that he would want a Frigidaire compressor and serving cabinet equipped with Frigidaire attachments suitable for the service desired; that the appellants Drug Company and Bratten had

full knowledge that all of the units mentioned were to be installed into a common "hook-up," which, when completed, should satisfactorily manufacture salable ice cream.

Averment was made that Bratten informed appellee, in the presence of the representative of the Drug Company, that the compressor and serving cabinet, with Frigidaire attachments, would have to be handled at Waco through the Light Company, since the last-mentioned company handled Bratten's products in that locality; that appellee then purchased the freezer and hardening cabinet from the Drug Company and the compressor was purchased from Bratten; that the appellee purchased a serving cabinet from one Urban and that Bratten inspected it and attached Frigidaire coils and valves; that the freezer and hardening cabinet were to be shipped directly from Chicago to appellee at Waco, and the other equipment was to be shipped by Bratten to the Light Company for delivery to appellee at Waco; that upon instructions from Bratten, appellee was to pay the Light Company for the parts furnished by Bratten; that the Light Company, with service men from Bratten's, would install all said units into the whole set-up, ready to efficiently manufacture ice cream; that the Light Company was fully advised of all said arrangements and, with this knowledge, undertook to perform them; that it was a joint obligation between all defendants with appellee to sell and furnish to him proper units of equipment, which, when combined by them, would make a complete ice cream manufacturing plant, and that each and all promised and obligated themselves that the plant when thus constructed would be suitable for the purposes intended by appellee.

Allegations were made that the plant, when finished, would not function; that appellee expended his funds in an effort to operate it, but was forced to abandon the enterprise because of its failure to manufacture ice cream. Prayer was for cancellation of his contracts of purchase and for damages sustained.

Each and all the appellants demurred generally and specially to appellee's pleadings and answered denying generally and by special pleas that each only undertook to furnish the particular parts purchased from them and in no way guaranteed the quality or performance of those parts sold by the others.

The case was tried to the court without a jury. Judgment was rendered in favor of appellee against all the appellants jointly and severally. The three appellants have perfected their respective appeals.

The assignments of error complain of the judgment because the pleadings and evidence do not support a joint and several judgment against all and, further, because there were no sufficient allegations to support a recovery for certain items of special damages recovered by appellee.

When this appeal was first submitted to this court, it was certified, for reasons therein stated, to the Supreme Court, with a brief statement of what was thought to have been shown by the evidence, and the following inquiry was made:

"Does this proof make out a prima facie case against each of the defendants for all his [appellee's] damages; that is, does the plaintiff have the burden of showing which of the units failed to function or why the combination failed to deliver the promised results?"

In answering the certified question, the Supreme Court said, in part:

"When this case was argued orally on submission we expressed doubt of the sufficiency of the certificate to present any particular question of law for decision, but we have concluded that it is sufficient to present the question of whether the burden rested upon plaintiff to show which of the units failed to function and, thus construing it, we make the following answer:

"The certificate does not disclose that the defendants made a joint sale to the plaintiff of a complete unit. On the contrary, it discloses that plaintiff purchased from each defendant the unit sold by it."

Under the above construction of the certificate, the Supreme Court held that the burden of proof was on the plaintiff (appellee) to show which unit failed to function, and that upon a failure to establish this he could not recover.

We have again carefully read the pleadings of the parties and the evidence as disclosed by the statement of facts and have concluded that the evidence is sufficient to support the judgment of the trial court's finding that it was a joint undertaking by all the appellants to sell to appellee a completed unit suitable for the manufacture

of ice cream. We regret that the certificate heretofore made to the Supreme Court was not full enough to enable that court to pass upon the question. There can be no doubt that the Supreme Court reached the correct conclusion on the question discussed by it; and unless the evidence supports the contention of appellee that it was a joint undertaking by all of them, the judgment should be reversed. But, as above stated, we believe there is sufficient evidence to support the findings of the trial court.

The testimony of appellee, upon which he relies, covers more than 100 pages of questions and answers, together with a great many objections by the three appellants. Those parts considered pertinent to the conclusions reached by us, summarized, are in substance as follows:

Appellee knew nothing of the kinds of machinery necessary to manufacture ice cream, but desired to establish such a plant in Waco, Tex., and engage in that business; he went to a representative of the Drug Company and told him of the plan. The agent was conversant with the requirements of such a plant and could furnish a part of the machinery, that is, his company could sell appellee a freezer and hardening cabinet, but told appellee· he would need a compressor and serving cabinet; that this same agent told appellee he recommended, as suitable equipment to be used with the freezer and cabinet offered by the Drug Company, a Frigidaire compressor and serving cabinet. The agent went with appellee to Bratten, and there, in the presence of two or more of Bratten's representatives, went over with them the plan of appellee, and the agents of both appellants advised appellee that the combination of the units would make for him the complete plant and would get the best results. In that conference appellee was told that a representative of Bratten had just returned from San Antonio where identically the same "hook-up" was performing perfectly. The appellee found with another party a used serving cabinet, which he could purchase at a reduced price and so advised Bratten; Bratten agreed that if its representative could inspect the cabinet after being reconditioned and be permitted to attach its coils and valves to the cabinet, Bratten would guarantee it the same as original or new Frigidaire equipment, and would charge appellee $120 for the copper tubing, valves, service, and guaranty. Appellee accepted Bratten's proposition, purchased the cabinet, paid $135 therefor, and instructed Bratten to equip it. Appellee purchased the compressor from Bratten, also the freezer and hardening cabinet from the Drug Company, and instructed the sellers to ship all equipment to Waco. Bratten advised appellee, however, that it would ship the equipment bought from it to the Light Company at Waco, since that company was its dealer in that territory, and stated that the Light Company and Bratten's service men would install the machinery making up the completed unit or plant. A representative of the Light Company delivered the parts shipped by Bratten and after all parts had been delivered by various transportation companies the Light Company and a representative from Bratten installed it all. The set-up would not function; Bratten sent other parts and connections to its service men at Waco and many changes were made in an effort to make the plant work. A representative of the Frigidaire factory went and tried to make it work, without avail. These efforts were continued over a period of about four weeks without getting results. A second man, purporting to be from the Frigidaire factory, came and said he could make it work, but would have to wire for extra parts from the factory; he said they would be there the next day, but they never came. Appellee advised each of the appellants from time to time during the period that the combination proposed by them would not function. Finally, he notified them by registered letter that he was surrendering the plant back to them.

Appellee was unable to tell why the hook-up failed to function—he did not know whether it was because of defects in one or more of the units or whether it was because of the manner in which it was installed.

It is a well-settled rule of law in this state that when a party sells articles to another there is an implied warranty that such articles are free from defects, and are as represented. 37 Tex.Jur. p. 281, § 121. Nor do we believe that such warranty against inherent defects in the articles affects the implied warranty by the sellers in this case that the parts sold by each of them were suitable, when combined, to constitute an efficient ice cream

886

manufacturing plant. Each of them had full knowledge of the purposes for which appellee had purchased them. Detroit Automatic Scale Co. v. G. B. R. Smith Milling Co. (Tex.Civ.App.) 217 S.W. 198.

■ It is apparent from the evidence referred to above that each of the appellants had full knowledge that appellee did not need and would not have purchased the articles from the respective appellants unless they would, when combined in the manner discussed between them, constitute an efficient plant for the manufacture of ice cream. An implied warranty was therefore given by each that the combination would produce the desired results. Houston Cotton Oil Co. v. Trammell (Tex. Civ.App.) 72 S.W. 244; Wintz v. Morrison, 17 Tex. 372, 67 Am.Dec. 658.

■ The judgment rendered by the trial court indicates a finding that the contract of sale by the appellants was a joint one with the sole purpose of enabling appellee to erect and operate an ice cream manufacturing plant and that the combination was fairly tried out and it failed. The evidence supports the conclusions reached by the court and is sufficient to warrant the recovery by appellee of the actual damages directly sustained by him. We do not believe our conclusions thus reached are in conflict with the holding of the Supreme Court on the certified question, but rather in harmony therewith. The answer to the certified question was based upon the fact that the certificate did not disclose that the defendants (appellants) made a joint sale to plaintiff (appellee) of a complete unit. The trial court found that it was a joint sale by all, of the complete unit, and we think the evidence supports the finding.

The record discloses that some appellants received more of appellee's money than did others, but there is no plea by either for contribution and there is nothing we can do about it on this appeal.

The trial court rendered judgment in the sum of $909.67, with interest thereon at the rate of 6 per cent. per annum from its date. In this amount there were included items which appear to be special damages, the recovery of which was not supported by the pleadings. This matter was pointed out in the original opinion rendered by this court prior to certifying it to the Supreme Court, and the appellee thereafter entered his remittitur in this court in the sum of $196.41, being the aggregate amount

shown to have been covered by items of special damages. The remittitur is accepted by this court and the judgment of the trial court is reformed so that the amount of said judgment shall be and is for the sum of $713.26, with interest thereon from January 5, 1933, until paid, and, as reformed, the judgment of the trial court is affirmed.

On Motions for Rehearing.

All appellants have filed motions for rehearing in this case, and each complain of matters stated in both opinions filed, the one on February 3, 1934, and on March 19, 1937. By this, our attention is called to the fact that in the latter opinion we did not state that we had withdrawn the original opinion. In the conclusions expressed on March 19, 1937, the judgment of the trial court was affirmed as it was in the first opinion, but we have stated additional grounds, based upon the record, to those expressed in the first opinion, and we therefore withdraw the opinion rendered on February 3, 1934, and substitute in lieu thereof the one of March 19, 1937.

The Texas Power & Light Company especially challenges the statement made by us in the last-mentioned opinion, which reads: "It is apparent from the evidence referred to above that each of the appellants had full knowledge that appellee did not need and would not have purchased the articles from the respective appellants unless they would, when combined in the manner discussed between them, constitute an efficient plant for the manufacture of ice cream."

As a reason for the assignment, that appellant says there is no evidence referred to by us and there is no evidence in the record that the Texas Power & Light Company knew, or was advised, prior to the time of the execution of the written contract by it, what equipment was to be purchased from the Southwestern Drug Corporation.

We think the statement in the opinion is amply supported by the testimony of appellee, as shown on page 10 of the statement of facts, wherein he testified:

"Mr. Lewis (representative of the Texas Power & Light Company) was told of my plan of opening up an ice cream plant in Waco, and of the equipment I would have to have to operate this freezer and harden-

ing cabinet, and the other items that make up the entire equipment, and he was told by Mr. Griffin (of the Southwestern Drug Corporation) at the time, the type of compressor that was to be used, that they recommended for their equipment."

We have carefully reviewed these several motions, but still believe we properly disposed of the appeal, and we therefore overrule all motions for rehearing.