### MORRISON v. MOREHEAD MFG. CO. et al.

No. 12949.

Court of Civil Appeals of Texas. Dallas.

Feb. 1, 1941.

Rehearing Denied March 15, 1941.

Conly K. Stevens, of Dallas, for plaintiff in error.

Lawther, Cramer, Perry & Johnson, of Dallas, for defendants in error.

YOUNG, Justice.

Morehead Manufacturing Company, of Detroit, Mich., obtained judgment for debt and foreclosure, upon peremptory instruction against J. S. Morrison, trading as Laundry Supreme, on chattel mortgage notes totaling $700, plus interest and attorney's fees; and appeal has been taken from such proceedings by writ of error. The consideration evidenced by Morrison's execution of the mortgage and notes was a sale by the Manufacturing Company of specified machinery, technically described as: "One complete double unit, Morehead 'back-to-boiler' system, suitable for a 126 H. P. boiler at 150# steam pressure, consisting of main boiler feed unit of 400# condensation per hour capacity, and make-up unit with automatic feed water level regulator of 1900# condensation per hour capacity." The total purchase price therefor was $870, and $170 in check to Eggelhof Engineering Company, Dallas, accompanied the signed order and notes.

The defense of obligor Morrison, briefly stated, was that plaintiff's system had proved worthless upon installation and fair test; but his counsel attempts a most confusing and irregular method of asserting it, rendering all defensive pleading difficult of interpretation. First is impleaded Henry Eggelhof, in a $995.85 cross action for damages. The amended answer involves plaintiff only, praying for cancellation and rescission on account of material representations made by its alleged agent, Eggelhof. Further defenses and affirmative matters are set forth in supplemental answers and successive trial amendments, including total failure of consideration; breach of express and implied warranty;

limited withdrawal of cross action and non-suit as to Eggelhof; apparently contending, however, at all times, that both plaintiff and its purported agent were still liable for $275, consisting of $170 cash paid, $80, cost of installation, and $25 freight charges. The final plea (by trial amendment) is non est factum.. This plethora of pleading fortunately becomes immaterial, by reason of recitals in the judgment that defendant, in open court, abandoned his cross action and all defenses, except that of cancellation and rescission. As this case must be reversed, we would suggest a. thorough pre-trial treatment of above voluminous, alternative and inconsistent pleas, in the interest of orderly pleading.

◼ Plaintiff first challenges defendant's assignments of error and propositions thereunder as being too general; not setting out specifically any distinct error. In this connection, we see that, additional to assignments brought forward in motion for new trial, there are twelve "new" assignments, two of which clearly suggest material variance between pleading, proof, and judgment (fundamental error) and will be considered; the other "new" matter disregarded; 3 T.J., Appeal and Error—Civil Cases, Sec. 592, p. 845. Of defendant's original assignments, Nos. 26 and 27 are held sufficient only because they are supported by a proposition which we think appropriately presents the error complained of. It reads: "As it appears from the plaintiff's petition that the notes and mortgage declared on were given in part payment of the sale price of the machinery described in the mortgage, and the undisputed evidence showed that it was complicated machinery intended for a steam laundry and not common machinery easily understood, being manufactured or sold by plaintiff as a Morehead system, 'suitable' for a 126 HP boiler at 150# pressure, there was an implied, if indeed not an express, warranty that the machinery so bought and sold for defendant's own use and not for resale was suitable for use in defendant's steam laundry as attachments to defendant's 126 HP boiler at 150# steam pressure, (the rule of caveat emptor not applying to such sale) it was reversible error to render judgment against the buyer upon the plaintiff's requested verdict when the buyer defended on the ground of breach of warranty, and asked for cancellation and rescission, tendering the property on paying the buyer's down payment and freight charges and labor to test same, and where there was ample evidence for the jury on the issue so raised."

◼ Morrison was operating a laundry early in 1937 when he sustained a fire, necessitating replacements in new machinery. Mr. Eggelhof, a mechanical engineer, surveyed the plant, and (we may conclude) made recommendations concerning defendant's requirements and plaintiff's product. A sale resulted, the purchase contract being signed, "Laundry Supreme, by J. S. Morrison," witnessed by Eggelhof. The instrument recited retention of title in vendor until the subject matter was fully paid for; another provision reading: " * * * this contract covers all agreements concerning this transaction of every name and nature, and no representations made by an agent, or any other person not included herein shall be binding." Purported true copies of above written contract appear thrice in the record: First, a certified copy from the county clerk's record; second, the original, which plaintiff's counsel stated, as a witness, was turned over to him by the Company; a third writing was introduced by defendant, on which was stamped: "This is an exact duplicate of the contract received by us and contains all the conditions under which we are shipping the goods. Morehead Mfg. Co.". These instruments are identical in wording, save that, in describing the equipment, the two exhibits of plaintiff referred to a "main boiler feed unit of 4,000# condensation per hour capacity" while defendant's exhibit calls for "400# per hour condensation capacity"; plaintiff's petition reads "400" in the same particular, while the judgment recited "4000". Only one system was delivered to defendant, hence its identity is established, but whether the above discrepancies are mere typographical errors, or refer to equipment of materially different capacity, the record does not disclose. No authorized agent of plaintiff testified, and Eggelhof, the engineer, who was perhaps as well informed concerning the machinery as the manufacturer, attended the trial but did not take the witness stand. From out the confusion of testimony in the 277-page statement of facts, we gather that plaintiff's machinery was designed to function (when attached to a high-pressure boiler) by receiving the steam, passing it through designated channels to the apparatus and presses of the

particular business, such as a laundry; the condensation of water, following use of steam heat and power, being forced off into traps and thence automatically back to the boiler. Abundant evidence was introduced by defendant tending to establish that plaintiff's system would not function when attached to defendant's 126 HP boiler under required steam pressure; that his presses, ironers, and drying machines became cold and unusable through excess condensation, or water, the Morehead apparatus not returning such to the boiler, with resulting loss of water in the latter; compelling a slow-down to refill with outside water. In this state of the testimony, plaintiff offering nothing to prove that the article delivered was the same as called for in the purchase order, an issue of either contract breach or rescission was raised from inconsistent specifications alone. 37 T.J., Sales, Sec. 239, pp. 524, 525. For a system that would handle 400# water condensation per hour is certainly something other than one calling for ten times that capacity in such regard—or of 4000# per hour.

Mr. Eggelhof, who first advised with defendant about the equipment, later assisted in its installation and test. There is ample evidence tending to show that after several days' trial, the system did not work; whereupon, it was removed and different machinery substituted. During the interval, defendant twice wired plaintiff of the troubles encountered. The goods were then tendered back, so defendant testified, through Eggelhof, the pleadings reflecting a continuance of such tender. According to Morrison, an engineer of plaintiff Company appeared later on, and offered to secure performance of the system on conditions that were not accepted.

The relationship of Eggelhof to the Company is not clear; though whether he was an agent or not appeared easily susceptible of disclosure from the Company's office records or communications had between such parties relative to the transaction. This becomes important in the main, should fraud by inducement be an issue on retrial, and plaintiff sought to be bound thereby. The prior representations of Eggelhof would otherwise be inadmissible, perforce of the contract provisions already quoted, aside from familiar rules governing written instruments. That Eggelhof was, at least, plaintiff's apparent or ostensible agent is fairly inferable from this record; Continental Oil Co. v. Baxter, Tex.Civ.App., 59 S.W.2d 463.

But looking alone to the purchase order, as insisted by plaintiff, we conclude the requirement on the part of the manufacturer, to furnish defendant "One complete double unit, Morehead 'back-to-boiler' system, suitable for a 126 HP boiler at 150# steam pressure," etc., was tantamount to an express warranty that, when so connected up, the equipment had actual practical fitness for the service it was manufactured to perform; Words and Phrases, Permanent Edition Vol. 40, page 664, et seq.

Even in the absence of express warranty, an issue is raised from the very face of the contract as to whether the plaintiff had knowledge or notice of defendant's business, and the purpose for which the system was obtained; and from an affirmative finding on this, a similar warranty would be implied. "One of the recognized exceptions to the doctrine of caveat emptor is the implied warranty by a seller of the fitness or suitability of goods purchased for a known purpose. It is settled that where property is bought for a special use of which the seller has knowledge or notice at the time of the sale, and in reliance upon his judgment or skill, there is an implied warranty that it is reasonably adapted or suited to the purpose of the buyer, * * *." 37 T.J., Sales, Sec. 126, pp. 290, 291; Detroit Automatic Scale Co. v. Smith Milling Co., Tex.Civ.App., 217 S.W. 198; Oil Well Supply Co. v. Texanna Production Co., Tex.Civ.App., 265 S.W. 203. There being adequate evidence that the system utterly failed in performance under contract conditions, ultimate fact questions followed for determination by the jury.

Our rather free discussion of testimony is intended only for guidance of the county court upon another trial. The judgment under review is reversed and this cause remanded for disposition consistent with above conclusions.

Reversed and remanded.

## On Rehearing.

Morehead Company is correct in the assertion that Morrison nowhere pleaded as a defense the discrepancies already noted between its trial petition and the several mortgage instruments, concerning the machinery in suit. The testimony of defendant (Morrison) is entirely insufficient

to establish that the system delivered was of 400 lbs. condensation capacity per hour; and this necessary element of plaintiff's proof does not otherwise appear in the record. The error in specifications can hardly be explained as "typographical"; but more logically suggests a material variance between pleading, proof and judgment—fundamental error. And although defendant's plea of contract breach was predicated generally upon representations of Eggelhof, yet his defensive allegations (paragraphs 14 and 15 amended answer and cross action) went further, we think, and raised issues on unsuitability of the equipment, following proper installation and test. Moreover, indulging every intendment fairly deducible from the record in favor of the party against whom peremptory instruction was here directed (defendant below), such mass of testimony, both written and oral, is so inconclusive as that we are unwilling for a judgment based thereon to stand. Eggelhof was also brought up on appeal, and judgment of reversal will likewise apply to him.

The motion for rehearing is overruled.