BLOOM'S SON COMPANY et al., Respondents, v. HAAS, Appellant.

St. Louis Court of Appeals, March 17, 1908.

1. **SALES: Delivery to Carrier: Agency of Carrier.** Where merchandise is ordered and no specific instructions given in regard to shipment, delivery of such merchandise to the usual carrier is a constructive delivery to the purchaser. The carrier in such case becomes the agent of the purchaser to receive and carry the goods.

2. ――――: ――――: ――――: **Admissions: Hearsay Evidence.** While the carrier in such case is the agent of the purchaser to receive the goods, he is not the purchaser's agent to inspect and pass upon their quality; the statements in the bill of lading issued by the carrier to the seller would not be admissions of the purchaser; the recitals in the bill of lading that goods received in that manner were in good condition would be inadmissible in evidence as hearsay.

3. ――――: **Condition of Goods Sold: Evidence as to Other Sales.** In an action for the value of merchandise sold by the plaintiff to the defendant where the defense was pleaded that the merchandise was in bad condition when delivered, for which reason the defendant refused to receive it, evidence that other

merchandise was taken from the same bulk in the same warehouse about the same time and sold to other parties and received without complaint as to its quality, and that merchandise was taken from the same bulk in plaintiff's warehouse and sold to the defendant and received and paid for without complaint, was inadmissible.

Appeal from Newton Circuit Court.—*Hon. F. C. Johnston,* Judge.

REVERSED AND REMANDED.

*Sturgis & Geyer* for appellant.

(1) This rice being shipped "f. o. b. Neosho" was at the seller's risk and he must suffer any loss or damage in transit. "The initial letters f. o. b., in contracts of sale where the property is to be transported, mean free on board the cars at a designated place whether that be the initial point of shipment or final destination. They imply that the buyer shall be free from all expense and risks attending the delivery of the property at the place named in the contract for that purpose." 13 Ency. Law (2 Ed.), p. 726; Havens v. Fuel Co., 41 Neb. 153, 59 N. W. 681. (2) The court takes judicial knowledge that such is the meaning of these letters in a contract of shipment. Copehart v. Implement Co., 103 Ala. 671. "If however the seller undertakes to make delivery to the buyer at a distant place, the carrier is the seller's agent." 21 Ency. Law (1 Ed.) 530; Benj. Sales (6 Ed.), sec. 693; McNeal v. Braun, 53 N. J. Law 617, 23 Atl. 687; Bank v. Smith, 107 Mo. App. 189. "Where the contract provides that the seller shall ship the goods to the place of business of the buyer and pay the freight, the place of delivery is the place of business of the buyer. Any loss on the way must fall on the seller." Devine v. Edwards, 101 Ill. 138; Murray v. Nichols Mfg. Co., 11 N. Y. Supp. 734. For a full discussion, see Lumber Co. v. Railroad (Neb.), 74 N. W. 670. (3) It was error for the court to admit

over defendant's objections the evidence by deposition of the witnesses, Julius Cahn and Louis Fabacher, that the bill of lading issued by the railroad as carrier showed the rice was in good condition and not damaged in any way; that had the rice been damaged, the railroad would not have issued a clean bill of lading as this was. This evidence was and is pure hearsay. It is in effect allowing the witness to testify that the agent of the railroad inspected the rice at the time of delivery for shipment, found it was not damaged and so stated in the bill of lading. The only proper way to prove such facts was to call the railroad agent as a witness and give his evidence under oath subject to cross-examination. If the bill of lading stating these facts had been offered, it would have been pure hearsay, because not given by the party knowing the facts under oath and subject to cross-examination. And this is true of written as well as oral statements. 1 Greenleaf (16 Ed.), secs. 98, 99 and 99a, pages 182-3; Gillet Ind. and Collateral Evidence, secs. 224 and 225, pp. 282, 283; 15 Ency. Law (2 Ed.), 309; State v. Sutton, 64 Mo. 107; Haskins v. Railroad, 19 Mo. App. 315. And the witness' statement of what the bill of lading showed is secondary evidence of the hearsay evidence. Price v. Hunt, 59 Mo. 258; O'Connell v. Nicholson, 67 Mo. App. 657.

*O. L. Cravens* for respondent.

NORTONI, J.—This is an action on account for the value of a number of pockets or bags of rice sold by the plaintiffs to the defendant. The plaintiffs recovered in the circuit court and the defendant appeals, insisting that the court admitted incompetent evidence on the part of the plaintiffs. The evidence tended to prove that the defendant ordered fifty pockets or bags of rice from plaintiffs, who are wholesalers of that

commodity doing business in the city of New Orleans. The rice was shipped over the Illinois Central railroad as initial carrier, to defendant at Neosho, Missouri, at which point he conducts a wholesale grocery store. The defendant received the rice, and upon examination, either that day or the next, discovered that sixteen bags of the same were spoiled. It seems that the rice had become saturated with oil, grease, or possibly water, so as to destroy its value. He refused to pay plaintiffs for the sixteen pockets mentioned, hence this suit. The case was tried to the judge without a jury. The theory advanced by the plaintiffs, as appears from the proof and the conduct of the case, was that the rice was sound and in good condition at the time it was delivered to the Illinois Central Railroad Company for carriage and that such delivery, being to the usual and customary carrier, passed the title to the rice to defendant; that if the rice became saturated while in the carrier's possession after delivery to it in good condition by the plaintiffs, the loss is the loss of the defendant and not one these plaintiffs should sustain. Now it is the established law that when goods are ordered and no specific instructions are given in regard to their shipment, as in this case, a delivery to the usual carrier for the purchaser with proper directions, is a constructive delivery to the purchaser, and the goods, immediately upon such delivery to the carrier, become the property of the purchaser, subject only to the right of stoppage *in transitu*. The purchaser by issuing general directions to ship, as in this case, authorizes the seller to ship in the usual way and renders the carrier the agent of the purchaser for the purpose, at least, of receiving the goods for carriage and operating a transfer of the ownership. [Comstock & Co. v. Affoelter, 50 Mo. 411; 24 Amer. and Eng. Ency. Law (2 Ed.), 1071-1072.] This being true, the important question in this case, therefore, is the condition of the

rice at the time of its delivery to the carrier at New Orleans. The plaintiffs introduced two witnesses only. One of these was the plaintiff Cahn, the other the drayman who delivered the rice to the railroad station at New Orleans. Both gave evidence to the effect that it was in good condition when delivered to the railroad. It appears, however, that they made no careful inspection of the rice. Their testimony concerned rather its condition as it appeared in the sacks. Both of these witnesses were permitted to testify over the objections and exceptions of the defendant that upon delivery of the rice to the Illinois Central Railroad Company at New Orleans its agent issued a bill of lading therefor which recited that the rice was in good condition and was not damaged in any way when received by it; that there was no indorsement on the bill of lading that the rice was damaged, and in fact, the bill of lading was properly issued in clean form. One of those witnesses, Fabacher, the drayman, was permitted further to say, over the objection and exception of defendants: "If the rice was not in good condition at the time of delivery to the Illinois Central Railroad, the agent would not have issued a clean bill of lading to me, but would have indorsed on the bill the condition in which the rice was at the time of delivery, such as wet, or damaged, or caked." This evidence was hearsay and it should have been excluded. It implies that the railroad agent examined the rice pending the very act of delivery which passed title and found it to be in good order and sound. While the carrier may have been the agent of defendant upon delivery of the rice to it, it was clearly not his agent in that sense which would justify an admission on its part as to the soundness of the rice which would bind the defendant in a suit for the value thereof between the seller and buyer. The railroad company was the agent of defendant to receive and carry the rice but was not his agent to inspect and pass upon the qual-

ity. As to that matter, the railroad company and its agent stood as any third party and the recitals in the bill of lading were wholly incompetent against the defendant for the reason they were hearsay as to him. It is a general principle of the law of evidence that hearsay from a person not a party to the suit is not admissible because such person was not under oath and the opposite party had no opportunity to cross-examine him. [1 Greenleaf on Evidence (16 Ed.), secs. 98, 99, 99a; 14 Amer. and Eng. Ency. Law (2 Ed.), 309, 310; Chapman v. Chapman, 2 Conn. 348; Hoskins v. Railway, 19 Mo. App. 315; State v. Sutton, 64 Mo. 107.] If the evidence above referred to was important on the issue, and indeed it was vital, the plaintiffs should have taken the deposition of the railroad agent or have produced him in court and thus afforded the defendant an opportunity for cross-examination under the forms of law.

One of the plaintiffs was also permitted to testify over defendant's objection and exception, that at the same time the shipment of rice was made to this defendant, plaintiff also made shipments of rice to other parties out of the same lots of rice in bulk in their warehouse and remittances were received therefor in due time without contention as to the condition and quality; and also that a few days before this shipment they had shipped the defendant a lot of rice out of the same bulk in one of their warehouses which he had accepted and paid for without complaint. This evidence certainly does not tend to throw light upon the issue as to the condition of the rice involved in the present controversy at the time it was delivered to the carrier for the defendant and it should have been excluded. The evidence as to the shipments of rice to other parties, which were received by them without complaint, was wholly irrelevant as to the issues between the parties to this suit and appears highly prejudicial to de-

fendant's rights.  As to that pertaining to the shipments of rice to defendant from the same bulk a few days before the shipment involved here, it may be said that while the rice in bulk in plaintiffs' warehouse may have been sound and in good order at that time, it may have been soaked by an overflow or otherwise, between that day and the date of the present shipment and thereby caused to mould.  Even though there is some relaxation of strict rules on the reception of evidence when a case is tried before the judge without a jury, it would be unpardonable for an appellate court to condone the rulings above indicated.  It appears the important and crucial question in the case was the condition of the rice at the time of the delivery to the carrier and to permit a judgment to stand which affirms the reception of such rank hearsay testimony as the bill of lading mentioned, would be highly prejudicial to the defendant's rights.

For the reasons given, the judgment will be reversed and the cause remanded.  It is so ordered. *Bland, P. J.,* and *Goode, J.,* concur.