## DUNLAP HARDWARE CO. v. E. ·F. ELMBERG CO. (No. 2089.)

(Court of Civil Appeals of Texas. Amarillo. April 25, 1923. Rehearing Denied June 6, 1923.)

**1. Appeal and error ⟪key⟫971(2)—Evidence ⟪key⟫ 546—Competency of witness to give opinion largely for trial court reviewable only for clear abuse of discretion.**

The competency of a witness to give an opinion is in a great measure a matter for the trial court, and its holding will not usually be reversed unless it is clear that it has abused its discretion.

**2. Evidence ⟪key⟫470—Generally nonexperts may not give opinions.**

Generally nonexperts may not give their conclusions and opinions, but should merely state the facts, leaving to the jury the drawing of conclusions therefrom.

**3. Evidence ⟪key⟫470 — Nonexperts may give opinions where facts cannot be made plain to jury.**

Where the facts, situation, or conditions cannot be reproduced or made plain to the jury,·

---

nonexperts may state their opinions or conclusions.

**4. Evidence ⊂═▷514(1)—Criterion of admissibility of opinion that farmer could operate machines.**

If mechanical construction of machines is simple and their operation may be easily described to the jury, then opinions as to whether an ordinary farmer, with the tools usually accompanying a Ford car, could operate them, is not admissible; otherwise is admissible.

**5. Appeal and error ⊂═▷1050(1)—Expression of opinion by witness detailing basis not reversible error.**

Expression of opinion by witness having special knowledge of the matter, and detailing the facts on which his opinion is based, is generally not reversible error.

**6. Evidence ⊂═▷508—When expert's opinion admissible.**

Not only the facts, but the conclusions to which they lead, may be testified to by qualified experts, if the matter concerning which the opinion is expressed is one which requires peculiar skill and knowledge not within the range of ordinary training or intelligence.

**7. Evidence ⊂═▷470—When opinion is to be formed by jurors.**

If the facts, conditions, and circumstances are such that they can be made palpable and the conclusions to be drawn are matters of common knowledge, the conclusions are not to be stated by witness; but it is for the jury to form their own opinions.

**8. Evidence ⊂═▷539—Witness shown competent to state his conclusion as to operation of a machine.**

Witness *held* shown competent to state that the machine in question could be operated by an ordinary farmer, of ordinary intelligence, with the tools accompanying a Ford car.

**9. Evidence ⊂═▷539—Evidence held admissible in action for breach of warranty in sale of machines.**

In action for breach of warranty in sale of feed grinders, with belt attachment for connecting the grinders with Ford cars, testimony that there was always more or less difficulty in putting together farm machinery and machines, because you generally have to prize them around and make them fit, and that these machines were something on the same order, *held* admissible, where all the witnesses so testifying showed more or less familiarity with machinery of this kind and stated the facts on which they based their opinions.

**10. Appeal and error ⊂═▷1050(2)—Evidence ⊂═▷129(6)—Evidence in action for breach of warranty of machines sold as to other machines held irrelevant and prejudicial.**

Evidence in action for breach of warranty of machines sold, by reason of defective construction, that defendant had sold many more of them to others and had no complaint of them, *held* irrelevant and prejudicial.

**11. Evidence ⊂═▷47.1(3)—Testimony held statement of fact and not expression of opinion.**

Testimony that witness had seen the belt attachment when attached to a Ford car run washing machines, etc., *held* a statement of fact, and not an expression of opinion.

**12. Sales ⊂═▷440(1)—Evidence held inadmissible in action for breach of warranty.**

In action for breach of warranty, of feed grinders, permitting E., a representative of defendant manufacturer, to testify that he did not know what maize and kaffir corn were, and that he thought the slot of the machines was too large for such grain, was error; the contract having been executed by D., another representative of defendant, after taking one of the machines and by actual test in grinding maize and kaffir corn emphasizing his representations as to its fitness for that purpose.

**13. Evidence ⊂═▷155(10)—Version of party to conversation admissible in view of other party's testimony.**

B. having been examined by both parties as to his conversation with E., E. could give his version of the conversation.

**14. Trial ⊂═▷219—Substantial compliance should be defined for jury.**

The term "substantial compliance," within the general rule that substantial compliance with contract for sale of personal property is sufficient, should be defined by the court for the jury.

**15. Sales ⊂═▷267—Generally express warranty excludes implied warranty.**

The general rule is that an express warranty in a sale excludes an implied warranty.

**16. Sales ⊂═▷273(2)—Warranty by seller, maker of machines, of quality and fitness for purpose for which sold, implied.**

In the absence of express warranty inconsistent therewith, there is in the sale of machines by the maker thereof an implied warranty of their quality and fitness for the particular purpose for which they are sold.

**17. Sales ⊂═▷288(2)—Unloading by buyer not acceptance barring recovery on implied warranty of fitness.**

For the buyer of machines to unload them on arrival is not such an acceptance as will bar right of action for breach of implied warranty of fitness for the purpose for which they were sold.

**18. Sales ⊂═▷288(2) — Express warranty of quality and fitness survives acceptance in case of sale by manufacturer to retailer.**

Where personal property is sold by manufacturer to retailer, express warranty of quality and fitness for purpose for which sold survives acceptance.

**19. Sales ⊂═▷426—Seller's agreement to replace and make good does not bar other remedy.**

Agreement of seller to replace and make good defective machines, or parts due to defective workmanship, does not deprive buyer of other remedies for breach of warranty of quality and fitness, such stipulation being permissive rather than mandatory.

---

⊂═▷For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

20. Sales ⚙179(4), 288(2), 348(3), 428—Buyer not estopped by retention of article inferior in quality; damages from inferior quality may be offset against price.

Where an article is not worthless for the purpose for which it was bought, but is simply inferior in quality to that warranted, retention will not generally estop buyer from urging partial breach of warranty, or partial failure of consideration, and he may offset his damages against the contract price.

Appeal from District Court, Deaf Smith County; Henry S. Bishop, Judge.

Action by the Dunlap Hardware Company against the E. F. Elmberg Company. From judgment for defendant, plaintiff appeals. Reversed and remanded.

See, also, 234 S. W. 700.

Wm. M. Knight, of Hereford, and Underwood & Jackson, of Amarillo, for appellant.

W. H. Russell, of Hereford, J. V. Gregory, of Parkersburg, Iowa, and Barrett & Works, of Amarillo, for appellee.

HALL, C. J. The appellee, as the manufacturer of a certain type of feed grinder, and a belt attachment for use in connecting the grinder with a Ford car, entered into a written contract with appellant company on May 3, 1920, by the terms of which it appointed the appellant company its exclusive agent for the sale of its grinders and belt attachments, in an extensive territory. The contract recites in part that appellant has purchased from appellee 250 grinders and 250 belt attachments, at a price of $18.50 each, f. o. b. Parkersburg, Iowa; that the machines are to be paid for by depositing a $1,000 certified check with the contract in a bank at Hereford; that the check should be delivered to appellee upon receipt by appellant of a bill of lading for the machines, the balance of $8,250 to be paid when the shipment arrives at Hereford, Tex. It further recites that appellee has assisted appellant in taking orders for about 300 of the machines, and contains the following material stipulations:

"(5) The party of the first part guarantees that every machine will come up to and fulfill every claim made for it in the advertising matter used by first party, and hereby promises to refund in full the purchase price for any machine sold by the second party in the territory above described that fails to come up to said guarantee. The first party also agrees to replace any defective parts in said machine, due to defective workmanship, without charge to the party of the second part, provided that the transportation charges of said defective parts shall be prepaid to the factory at Parkersburg, Iowa.

"(6) The party of the first part agrees to furnish a sufficient supply of advertising matter, to be circulated through the territory above described for the purpose of advertising such machines and promoting the sale thereof. The second party agrees that it will cause to be mailed to the first party a mailing list of all owners of Ford cars in each county, whereupon proper advertising matter will be mailed by the first party, from the office at Parkersburg, to such owners of Ford cars, giving the name and address of the representative of the second party in such county, all without cost to the second party."

The material allegations of the appellant's second supplemental petition, upon which the case was tried, are substantially these:

"That by the terms of the written contract defendant guaranteed that every machine should come up to and fulfill every claim made by it in the advertising matter used by the defendant. That the defendant promised and bound itself to refund in full the purchase price for any machine sold by the plaintiff that failed to come to said guaranty. That said advertising matter contained cuts of the grinders and belt attachments to show them well made, nicely fitting together, and indicated, and were intended to indicate, that the belt attachment could be attached to a Ford car without use of any tools, without trouble, and with little effort, by an unskillful laborer. That the advertising matter claimed, among other features, that the machines would grind corn and oats, coarse or fine, would grind wheat into graham flour, would grind oats fine at 20 bushels per hour, and corn at 25 to 40 bushels per hour, and stated as to the belt attachments: 'On or off in 15 seconds.' 'Convert your Ford engine power into gas engine power.' 'Elmco Ford belt attachments, attached in 15 seconds time to your car without use of bolts, screws, or cumbersome jacks; does not change the appearance of your car nor interfere with it for touring. Saves you the cost of gas engine outfit.' 'Elmco Ford belt attachments enables your Ford to do the work of an 8 h. p. engine, without straining or injuring. Gives you gas, engine power anywhere your Ford will go. More portable than gas engine and runs with Ford economy.' That at the time of entering into the contract the agent of the defendant, together with a representative of plaintiff, canvassed some of the territory and demonstrated the working qualities of the machine for the purpose of introducing and selling them to contemplated purchasers, and in these demonstrations used a small machine furnished by the defendant's agent. That demonstrations were made with kaffir corn, maize, feterita, and other grain produced in the localities canvassed, and the defendant's agent represented to plaintiff and prospective purchasers that said machine would grind kaffir, maize, and feterita, knowing that said grains were principally raised in said localities, and that little wheat, corn and oats were produced in said territory. That plaintiff relied on such representations and believed that said machines would grind corn, maize, and feterita, as well as wheat, corn, and oats, and but for such representations plaintiff would not have entered into the contract nor purchased the machines. That on or about the day the contract was executed plaintiff purchased 500 grinders and 500 belt attachments, and paid $18.50 each therefor, together with the freight charges amounting to $844.60, which purchase constituted two carloads of the machines; that

said purchase was made under the express warranty contained in the attached written contract, and under the guaranty that every machine would fulfill every claim made for it in the advertising matter, and was further purchased under the implied warranty that they were suitable for the purpose for which they were made and sold, and that they would do the work which they were represented to do well and effectively. That at great expense plaintiff employed representatives who canvassed portions of the territory and who sold and delivered about 500 grinders and attachments, after which it was found that 236 grinders and an equal number of belt attachments, which had not been sold, were so poorly and defectively constructed that they would not grind grain and were not suitable for the work for which they were purchased, and did not comply with the warranty nor the claims in the advertising matter, and were not as represented by defendant's agents. That the feed grinder was so poorly constructed that the grain poured out through the opening left where the casing came together, without the grain reaching the burrs. That if the grinders had been properly constructed and constructed as the demonstration machine was constructed, and in accordance with the advertising matter, the casings would have fitted together closely and no grain would have escaped but would have reached the burrs and would have been forced to pass through them and would have been properly ground. That the burrs could not be fitted in the machine so as to run true, and so that the faces of the burrs would be parallel to each other. The burrs could not be drawn up together so as to grind the grain evenly, but ground it finer on one side than on the other, and permitted whole grains to pass through unground. That the bolts for drawing the burrs together could not be used without having the threads cut off, and that the threads were not cut far enough back upon the bolts nor deep enough. That the yokes used in drawing the front parts of the cast-iron shell to the back part were rough and unfinished, and did not fit on and over the collar of the shaft nicely, which caused the machines to heat. That the worms designed to run at the discharge side of the grinders were not true, and were rough and unfinished, causing the machines to heat. That the boxes in which the ball bearings were intended to be placed were rough and unfinished, deeper on one side than on the other, and the bearings could not be placed in them so as to run without friction, and without heating, and that on account of such defects the grinders were worthless and of no value for any purpose. That each belt attachment not accompanied by a perfect feed grinder is of no value and worthless, and was sold to plaintiff for the sole purpose of being attached to a Ford car and driving a grinder, and that said attachments were badly and defectively made, and did not fulfill the warranty and the claims made for them in the advertising matter, nor were they as represented by defendant's agent. That on account of their defective construction they could not be readily and easily attached to a Ford car by an unskilled laborer without the use of pulleys, and that their different parts were fitted together so poorly that they could not be attached to a car without the application of much force in bending and springing the side arms and braces, and without the use of tools which the average purchaser did not have. That the attachments were so defectively constructed that the feed grinder could not be attached without effort by an unskilled mechanic, and without tools. That the grinders would not slip onto the attachments without bending and readjusting the attachments, and this could not be done without much effort and loss of time, and tools were required which were not possessed by the class of people to whom the machines were to be sold. That the belts in said attachments were not true. That the universal joint on the end of such shaft was out of alignment. That they were rough and unfinished and created friction and heat when run a few minutes. That the stub shafts were rough and unfinished and could not be inserted in the socket of the universal joint, and on account of such defects it was impossible to grind grain as represented by the agent and in the advertising matter. That of the 500 machines sold plaintiff 250 grinders and 250 attachments, all of which were defective, as above described, by reason of which defendant is liable to plaintiff on its warranty in the sum of $9,250. That if said machines had been as represented each machine was reasonably worth $27 at Hereford, Tex., but that the machines and each of them not sold by the plaintiff were worthless and of no value. It was understood at the time of the contract that plaintiff would sell the machines at a profit of $8.50 each, and that about the 15th day of July the defendant shipped a third car, containing 250 grinders and 250 attachments, which car plaintiff refused to accept because of the defective condition of the machines, as above set out. That the machines in said third car were, like the other machines, defectively and improperly constructed, and were not salable, on account of which plaintiff lost the profits that it would have made on 972 machines, aggregating $8,250. That plaintiff paid the freight on said two cars, amounting to $844.60. That such machines were worthless and have been a total loss to the plaintiff, and in consequence of the facts plaintiff has sustained actual damages in the sum of $28,000. That plaintiff here tenders and offers to restore to defendant each and every grinder and belt attachment not heretofore sold, upon repayment to plaintiff of the price paid therefor."

Plaintiff attached a copy of the contract and a supplemental contract, extending the territory, together with copies of the advertising matter, to the petition.

The defendants answered by general demurrers, numerous special exceptions, general denial, and specially alleged, in substance, as follows:

That plaintiff cannot now rescind and have cancellation of the contracts of purchase and sale and is estopped from seeking any such relief in that plaintiff has ratified, confirmed, and approved all of said purchases, and has elected to stand by its purchases and to assert rights thereunder inconsistent with rescission by seeking to recover damages in both its original petition, filed herein August 24, 1920, and also in its first amended petition, filed September 3, 1920, and in neither of said pleadings did

plaintiff seek rescission or cancellation, but sought only to recover damages for alleged breach of warranty. That after filing of its said original petition, and before presenting its second amended original petition, and while claiming damages only, plaintiff continued to sell and dispose of the machinery, by which acts and conduct plaintiff has waived its right, if any it ever had, to seek rescission, and is estopped from asserting the same. That the written contract between the parties provides the remedies of each in case of breach thereof. That defendant has complied with each and every obligation resting upon it and is now ready and willing and fully able to comply with any and all obligations that may properly rest upon it under the terms of said contract, and now offers and tenders full and complete performance and compliance with its terms. That all of the machines were in full compliance with the contract and advertising matter, and in this connection defendant further shows that that portion of its said contract with plaintiff, providing for the replacement of any defective parts that might be discovered, fully protects plaintiff against any defects, and that the alleged defects, if any, are such as naturally and ordinarily arise from paint and rust and from knocks and injuries in the shipping of such machinery. That plaintiff never shipped the defendant any defective machines or parts nor made any complaint whatever as to said machines until after the third carload had been shipped, and the defects and complaints now alleged by plaintiff were never made known to defendant until all of said machinery had been shipped and until a large portion thereof had been sold by plaintiff. By way of cross-action defendants show that in the making of said contract the defendant's business and the sale of its machinery would have been built up and made profitable to defendant by the fulfillment of said contract by plaintiff, and defendant would have realized large profits therefrom. That defendant has incurred much expense incident to said contract and in advertising said machines, amounting to about $2,500, all of which profits, expenses, and increase of business have been lost to it by reason of plaintiff's failure to comply with its portion of said contract, and on account of the breach thereof by plaintiff defendant has been damaged in the sum of $15,000.

In a supplemental petition the plaintiff, after general demurrer and special exceptions, alleged, in substance, that if it ever ordered the third car of machines said order was canceled by wire before they were shipped; that at the time of the supplemental contract, dated the 15th day of May, 1920, it did agree to purchase the third carload of machines, which it ordered within a few days thereafter; that said written agreement, however, provides that the car should be shipped on or before six weeks from that date, subject to the order of plaintiff, and that by the terms of the written contract it had the right to cancel said order any time before the car was delivered; that said car was not shipped within six weeks, and that time was of the essence of the contract. Plaintiff further says that the consideration for said car of machines has wholly failed because they were defective and so badly constructed as not to comply with the contract between the parties.

By a supplemental answer the defendant replied to the foregoing pleading of plaintiff, and after general demurrer and general denial alleged, in substance, that the plaintiff waived any right to cancel its order for the third carload of machines and is estopped from claiming that time was of the essence of the supplemental contract, and from claiming that the car was not in compliance therewith by requesting that the shipment be delayed, by continuing to sell and dispose of the machinery in Oklahoma, and by collecting money from the sale and distribution of said machines in Oklahoma long after the expiration of said six weeks, and long after the car had been shipped.

In response to special issues, the jury found that: (1) Five of the 236 grinders of the first shipment of two carloads failed to substantially comply with the warranty, and that such failure was not due to design or general construction of the machines, but was on account of bad workmanship; that the defects could have been corrected and the machines made to operate substantially as contemplated by the parties by the substitution of other parts for those that were defective; (2) that none of the grinders of the third carload failed to substantially comply with the written warranty; (3) that none of the 236 belt attachments of the first shipment of two carloads failed to substantially comply with the written warranty; (4) that none of the belt attachments of the third carload failed to substantially comply with the written warranty; (5) that none of the first shipment of 236 grinders, now in the possession of plaintiff, are totally worthless; (6) that none of the first shipment of 236 belt attachments, now in the possession of the plaintiff, are totally worthless; (7) that the defective grinders of the first shipment, now in the possession of plaintiff, are worth $15 each. Based upon this verdict, judgment was entered denying the plaintiff a recovery and decreeing that defendant recover on its cross-action the sum of $9,250, with interest thereon from July 27, 1920, at 6 per cent. per annum, until paid, together with all costs.

[1-3] The first contention is that the court erred in permitting the witness Carroll to testify that any ordinary farmer, with ordinary intelligence, with the ordinary tools that go with a Ford car, in his opinion, could set up one of the machines, and that he did not think there was anything required out of the ordinary in setting up that kind of machinery. The objection was that the testimony was an expression of the witness' opinion and only his conclusion and called for a comparison with other machinery.

The court held that Carroll was a competent witness. The competency of such witnesses is in a great measure a matter for the court, and appellate courts will not usually reverse the holding of a trial judge, unless it is clear that he has abused his discretion. M. K. & T. Ry. Co. v. Hedric (Tex. Civ. App.) 154 S. W. 633. The objection that the question to Carroll called for a comparison with other machinery is without merit. The only objection to be considered is that his testimony was an expression of his opinion, and was only his conclusion. The general rule is that nonexpert witnesses may not give their conclusions and opinions, but they should state the facts, and the conclusions to be drawn therefrom should be left to the jury. There is another rule which may apply here, and is that, where the facts, situation, or conditions cannot be reproduced or made plain to the jury, then the witnesses may state their opinions or conclusions. Hines v. Collins (Tex. Civ. App.) 227 S. W. 332; M., K. & T. Ry. Co. v. Gilcrease (Tex. Civ., App.) 187 S. W. 714. There is no evidence in the record tending to describe either of the machines. If their mechanical construction is simple and their operation may be easily described to the jury, then the opinion of the witnesses with reference to whether an ordinary farmer, with the tools that usually accompany a Ford car, could operate it, should not have been admitted; otherwise the case comes within the rule just expressed.

Where a witness has a special knowledge of the matter about which he is testifying, and details the facts upon which his opinion is based, the expression of his opinion is generally not reversible error. And if the matter concerning which his opinion is expressed is one which requires peculiar skill and knowledge not within the range of ordinary training or intelligence, not only the facts, but the conclusions to which they lead, may be testified to by qualified experts. If the facts, conditions, and circumstances are such that they can be made palpable, and the conclusions to be drawn are matters of common knowledge, then it is within the province of the jury to form their own opinions. We think, in view of the record, it was competent for Carroll to state that the machine was such that it could be operated by an ordinary farmer of ordinary intelligence, and with the tools which accompany a Ford car. He testified that as a farmer he had worked with row binders, broadcasting binders, all kinds of farm implements and windmills; that he had been requested to assist Elmberg in testing some of the machines in question and to witness their operation, and that in connection with Dowden and others they did put some of the machines together and operated them. He described the working parts, and from his testimony seemed to have an intelligent idea of both of the machines and of the result of their work.

[9] There is no merit in the objection that this witness' evidence was immaterial and irrelevant when he stated that there was always more or less difficulty in putting farm machinery and machines, such as the one under consideration, together, "because you generally have to prize them around and make them fit," and that these machines were something on the same order. There was no error in permitting the witnesses Draper, Gouldy, and Tierful to testify to the same effect. They all showed more or less familiarity with machinery of this kind, and stated the facts upon which they based their opinions.

[10] The court erred, however, in permitting the witnesses Gouldy, Dowden, and Elmberg to testify in substance that they had manufactured and sold other machines like the ones under consideration; that none of the purchasers of the other machines had ever made any complaint to them, or called to their attention any special defect; and that the witnesses themselves had never had any trouble with cups or other parts of the machines which had been sold to other parties. The witness Elmberg was permitted to testify that his company had produced 14,000 belt attachments and 12,000 grinders. Practically all of them had been sold; that there had been no changes since January, 1920, in the machines, and that, aside from the objections and complaints made of the machines in this territory, he had never had any trouble nor complaints, such as were made in this case. This testimony was all irrelevant. He further testified that his company had experienced considerable labor difficulty, the same as all factories, during and immediately after the war, and they had to let some men go on account of being incompetent, and that such condition existed, prior to the time they shipped these machines to plaintiff, for a year and a half or longer; but they had sold all the machines produced during that period, and had no trouble about them until this trouble. The inquiry should have been confined to the machines involved in this suit, and the admission of this testimony was highly prejudicial and requires a reversal of the judgment. Hill v. Hanan & Son, 62 Tex. Civ. App. 191, 131 S. W. 245; Haynes v. Plano Mfg. Co., 36 Tex. Civ. App. 567, 82 S. W. 532; Stuart v. Kohlberg (Tex. Civ. App.) 53 S. W. 596; Fetzer v. Haralson (Tex. Civ. App.) 147 S. W. 290; Stapper v. Wolter (Tex. Civ. App.) 85 S. W. 850; Bloom's Son & Co. et al. v. Haas, 130 Mo. App. 122, 108 S. W. 1078.

[11, 12] There was no error in permitting the witness Dowden to state that he had seen the belt attachment, when attached to a Ford car, run washing machines, churns, etc.; this was the statement of a fact, and not the expression of an opinion. The appellee's rep-

resentative Dowden took one of each machine and in company with a representative of the appellant spent some time visiting prospective purchasers and by actual test in grinding maize and kaffir corn emphasized the representations he had made as to its fitness for that purpose. It was therefore error for the court to permit Elmberg, after the demonstration by Dowden and the contract had been executed by Dowden to testify that he (Elmberg) did not know what maize and kaffir corn were, and that he thought the slot was too large for such grain.

[13] The witness Beams had been examined by both parties touching his conversation with Elmberg, and it was not error to permit Elmberg to give his version of the conversation.

[14] The general rule is that substantial compliance with the contract for the sales of personal property is sufficient, but the court erred in failing to define the term substantial compliance.

[15, 16] The general rule is that an express warranty excludes an implied warranty. E. F. Elmberg Co. v. Dunlap Hardware Co. (Tex. Civ. App.) 234 S. W. 700; Case Threshing Machine Co. v. Hall, 32 Tex. Civ. App. 214, 73 S. W. 835. We incline to the opinion that the written warranty when considered together with the verbal representations made by Dowden during the demonstration, and prior to the execution of the contract, is a sufficient warranty of quality and fitness of the machines, to be furnished, for the particular purpose for which they were sold.

"Where an order for a particular article is sent directly to the manufacturer or producer of it, and is accepted, there is an implied provision in the contract that the manufacturer or producer of the article has a complete and intimate knowledge, not only of the process of its manufacture, but also of its merchantability, quality, and its adaptability, and serviceability with reference to the particular use for which he offers to sell it. As to these matters the purchaser does not stand upon an equality with him and may fairly be presumed to rely upon the manufacturer's superior information. Therefore, in all such cases of purchase from the maker or producer there is an implied warranty against any latent defects arising in the process of manufacture and not disclosed to the buyer and also an implied warranty of adaptability, usefulness, and generally of quality." 1 Black on Rescission & Cancellation, § 189; El P. & S. W. Ry. v. Eichel & Weikel (Tex. Civ. App.) 130 S. W. 922.

"If express warranties in a contract are in their nature inconsistent with the warranty, which would have been implied had none been expressed, it would indeed be violating the intention of the parties to imply warranties, but the principle should extend no further. An express warranty is generally exacted for the protection of the buyer not to limit the liability of the seller. The fact that a seller expressly warranted a machine to be made of the best steel ought not to exclude an implied

warranty that the machine is properly manufactured and will do the work that such machines are designed to do. If such warranty would otherwise be implied * * * though a contract is in writing and no warranty expressed, one may be implied, for the implied warranty is not based on a supposed agreement of the parties, but is an obligation imposed by law." 2 Williston on Contracts, p. 1871, § 993, note 22. And see Id., §§ 986, 989, 992 and 994.

If the fact of the verbal warranty should not be established, and the written warranty is not sufficient as to the quality and fitness of the machines for the purpose for which they were sold, then an implied warranty as to their adaptability to such purpose is not excluded. Detroit Automatic Scale Co. v. G. B. R. Smith Milling Co. (Tex. Civ. App.) 217 S. W. 198; Buffalo Pitts Co. v. Alderdice (Tex. Civ. App.) 177 S. W. 1044; 2 Mechem on Sales, 1222; Simpkins, Contracts and Sales, 912.

[17-19] The issue as to whether or not the machines, or any of them, were fit and suitable for the use and purpose for which they were manufactured and sold, should have been submitted, and the fact that the machines had been unloaded by the appellant is not such an acceptance as would bar its right of action. The express written and verbal warranty of quality and fitness survives acceptance in cases where personal property is sold by the manufacturer to a retail dealer. 2 Mechem on Sales, § 1395; 1 Page on Contr. 643, § 392. The agreement of the appellee to replace and make good any defective machines, or parts thereof, due to defective workmanship, does not deprive the appellant of other remedies since the stipulation is permissive rather than mandatory. Nunn v. Brillhart (Tex. Com. App.) 242 S. W. 459.

[20] Where an article is not wholly worthless for the purpose for which it was purchased, but is simply inferior in quality to that warranted, a retention of the article will not generally estop the buyer from urging partial breach of warranty or partial failure of consideration (Hayden v. Houghton [Tex. Civ. App.] 24 S. W. 803; Taylor Cotton Seed O. & G. Co. v. Pumphrey [Tex. Civ. App.] 32 S. W. 225), and he may offset his damages against the contract price (Barnum Wire & I. Works v. Seley, 34 Tex. Civ. App. 47, 77 S. W. 827).

Under the rule announced in Nunn v. Brillhart, supra, subdivision (e) of issue No. 1, submitted by the court, is an immaterial issue, since appellant was not bound, under the permissive stipulation in the contract, to return defective parts, but could, at his option, seek redress for such defects by his action for damages.

It does not appear that this was a sale by sample, and under the record the rules applicable to such sales do not govern the

rights of the parties, since it was not agreed that every machine to be thereafter shipped should be exactly like the one used by Dowden in making his preliminary demonstrations. It does not appear that the parties intended or understood that the contract in this case was a sale by sample. The court did not err in refusing the special issues presenting that phase of the case.

A number of propositions attack the sufficiency of the evidence to sustain the findings and the judgment. In view of another trial it would not be proper for us to discuss these propositions.

For the errors pointed out, the judgment is reversed, and the cause remanded.

### On Motion for Rehearing.

Both in the motion for rehearing and in an extended written argument accompanying it, the appellee, by reiteration and by unsupported assertion that the appellant, both by pleading and evidence, attacked the mechanical principle upon which the machines were constructed, seeks to justify the trial court's action in admitting the testimony of Elmberg, to the effect that no complaints had been received of other machines. The excerpts from the pleading quoted in the motion make it clear that the appellant company did not attack the mechanical principle upon which either of the machines was constructed. In fact, throughout the entire record, and as inferable from the number of machines purchased by appellee, it is clear that it admitted that the mechanical principle was good. The attack made in the pleadings and evidence is by reason of defective construction of the several machines. The issues involved here are in no sense the same as those discussed by Huff, C. J., in Wilson v. Avery Co. (Tex. Civ. App.) 182 S. W. 884, and no amount of repetition or unfounded assertion in the motion or argument can make the rule of evidence in the Wilson Case applicable to Elmberg's testimony in the instant case. Because of the difference we said in the original opinion, and still say, that the admission of Elmberg's testimony was highly prejudicial. The evidence was not objected to because it was highly prejudicial, and the original opinion nowhere declares that any such objection was made. Such an objection would not be entertained if the testimony offered were otherwise admissible, and this accounts for the appellee's attorney's failure to find such an objection in the record. We did not deem it proper to discuss the sufficiency of the evidence in the original opinion; but if the testimony of the witnesses Cobb and Gregg, with reference to the last car, is the same upon another trial and is uncontradicted, it would be sufficient to sustain a judgment for appellant as to that entire shipment.

The motion is overruled.