C. P. LAWSON, J. E. LAWSON AND C. C. LAWSON, CO-PARTNERS DOING
     BUSINESS AS C. P. LAWSON & SONS, RESPONDENTS, v. M. LONGO
     FRUIT COMPANY, A CORPORATION, APPELLANT.*

St. Louis Court of Appeals. Opinion filed July 6, 1926.

**1.—Customs and Usages—Sales—Inspection—Pleading—Evidence—Waiver.**
In an action for the purchase price of a carload of grapes, testimony with reference to a custom that, where goods are shipped under a bill of lading to shipper's order notify, under agreement in writing entitled "Standard Confirmation of Sale," a purchaser had no right of inspection unless specifically contracted for in the agreement of purchase and sale, **held** inadmissible in the absence of pleading and proof under such contract that such right of inspection on the part of purchaser was waived.

**2.—Sales—Custom and Usages—Inspection—Pleading—Evidence—Right of Inspection before Acceptance.** Absent any pleading and proof of a custom that no right of inspection is to be allowed unless specifically contracted for in the written agreement of purchase and sale, purchaser was entitled to inspection before acceptance even though purchaser acquiesced by special agreement that the shipment was to be made by bill of lading to shipper's order notify.

**3.—Same—Same—Same—Right of Inspection Denied—Purchaser May Reject.** Where the purchaser had a right to inspect a shipment of grapes before acceptance and the right of inspection was denied, the purchaser had the right to reject and was within its rights in rejecting the shipment, hence the trial court should have sustained its demurrer to the evidence offered at the close of the whole case.

*Corpus Juris-Cyc. References: Customs and Usages, 17CJ, p. 517, n. 96, 97; Sales, 35Cyc, p. 225, n. 29; p. 257, n. 36.

Appeal from the Circuit Court of the City of St. Louis.—Hon. Robert W. Hall, Judge.

REVERSED.

*Laughlin, Frumberg, Blodgett & Russell* for appellant.

(1) Where a petition alleges a contract of sale for delivery at point of shipment, and it appears that delivery was made to a railroad company under a shipper's order bill of lading, there is a total failure of proof of the allegations of the petition. Hunter Brothers Milling Co. v. Stanley, 132 Mo. App. 308; Roaring Fork Potato Growers v. Clemons Produce Co., 193 Mo. App. 653; Turner Looker Co. v. Heindman, 250 S. W. 88. (2) Where goods are not present at the place of sale the vendee has a right of inspection before acceptance. Pope v. Allis, 115 U. S. 363, 29 L. Ed. 393, 398; Schiller v. Blythe and Fargo Co., 15 Wyo. 304; Central Flour Mills Co. v. Gateway Milling Co., 213 S. W. 131; Kuppenheimer v. Wertheimer, 107 Mich. 77; McNeal v. Braun, 53 N. J. L. 617; Eaton v. Blackburn, 52 Ore. 300; Wallrice Milling Co. v. Continental Supply Co., 36 Utah, 121; Pierson v. Crooks, 115 N. Y. 539; Gifford v. Wellman, 187 Mo. App. 29; N. W. Helm Feed & Coal Co. v. Butler County Milling Co., 269 S. W. 630. (3) The giving of an instruction not based upon the pleadings and the evidence is reversible error. Fisher v. Central Lead Co., 156 Mo. 479; Coleman v. Railroad Co., 36 Mo. App. 140; Warder v. Seitz, 157 Mo. 140; Henderson v. Kansas City, 177 Mo. 477; Matson v. Frazer, 48 Mo. App. 302; N. O. Nelson Mfg. Co. v. Mitchell, 38 Mo. App. 321; Bloom v. Pope, 36 Mo. App. 410. (4) The measure of damages of the vendee is the profits lost by a failure of the vendor to perform. American Pub. & Engr. Co. v. Walker, 87 Mo. App. 503; Rhodes v. Landon Lumber Co., 105 Mo. App. 279, 315.

*S. C. Rogers* for respondents.

(1) A written contract must be so drawn as to contain all provisions. Edmunds v. Cochrane, 226 S. W. 1007. The courts will not

make contracts for the parties. Shouse v. Neiswaanger, 18 Mo. App. 250; Thornton v. Royce, 56 Mo. App. 182; Beatie v. Coal Co., 56 Mo. App. 230; Chouteau v. Russell, 4 Mo. 553. Evidence of usage cannot vary its terms. Keller v. Meyer, 74 Mo. App. 318. (2) A bill of lading is only prima-facie evidence of title which can be explained by extraneous evidence to show the real intent of the parties. Scharff v. Meyer, 133 Mo. 428. (3) By contract delivery can be made. F. O. B. point of shipment, shipper's order bill of lading notify, with bill of lading endorsed and attached to draft and forwarded to destination for payment, and shipper retain ownership merely for the purpose of securing payment. 1 Williston on Sales, page 602, section 280-B; Lawder Co. v. Mackie Grocery Co., 97 Md. 1; Miller v. N. Y. Cent. R. R. Co., 205 N. Y. App. Div. 667, 200 N. Y. Sup. 287; Estis v. Harnden, 153 Mo App. 381; Wheless v. Grocery Co., 140 Mo. App. 572; Bass v. Walsh, 39 Mo. 197; Dehner v. Miller, 166 Mo. App. 504; Williams v. Evans, Admr., 39 Mo. 201; Glass v. Glazer Bros., 91 Mo. App. 567; The Standard Casing Co. v. Calif. Cas. Co., 233 N. Y. 413. (4) The right of inspection may be waived by contract or otherwise. 2 Wissiston on Sales, page 1246, section 479; 2 Williston on Sales, section 470; Lawder Co. v. Mackie Grocery Co., 97 Md. 1. Strict performance of a contract may be waived and where buyer by his act causes the seller to do or refrain from doing something to protect himself, the buyer may become bound. Famechon v. Devore, 184 Mo. App. 577. The vendor has a reasonable time in which to complete a contract. Hudson et ux. v. Barnes, 278 S. W. 395. (5) Special or consequential damages cannot be recovered unless the party to be charged is notified of the purpose of the purchase so that seller can anticipate such liability. Shouse v. Neiswaanger, 18 Mo. App. 236; Morrow v. Railroad, 140 Mo. App. 200; 35 Cyc. 643; Martin v. Lumber Co., 167 Mo. App. 381. (6) Construction of a contract as to place of delivery of article sold is a question of law for the court. Williams v. Gray, 39 Mo. 201. The intention of parties to a contract must govern in determining the rights of the parties. Glass v. Glazer Bros., 91 Mo. App. 567.

BECKER, J.—On October 19, 1922, plaintiffs and defendant entered into a written contract whereby plaintiffs agreed to sell defendant a carload of Concord grapes, to be shipped to St. Louis, at the price of $70. per ton, f. o. b. New York. The sale was made by telegram dated October 18, 1922, and afterwards confirmed by what is known in the State of New York as the "Standard Confirmation of Sale," which agreement makes the standard rules and definitions of trade terms for the produce and vegetable industry appearing upon the reverse side of the said confirmation of sale a part of the contract.

The car was shipped from Brocton, New York, on the 18th of October, 1922, under a bill of lading by which plaintiffs consigned the shipment to themselves at St. Louis, with the notation to notify defendant. The bill of lading, with a draft for the price of the shipment, was sent to the Franklin Bank, St. Louis. There was no instruction given to the railroad over which the shipment was made, or to any connecting carrier giving defendant the right to inspect the car before payment of the draft or the taking up of the bill of lading.

The car arrived in St. Louis on October 24, 1922, and as soon as defendant was notified on that day of the arrival of the shipment it attempted to inspect the same, but inspection was refused by the railroad company. Defendant then called upon plaintiffs' brokers who had sold the car to it, and informed them that it had not been permitted to inspect the shipment. The brokers agreed to get the right of inspection for defendant immediately, but no notice was received on that day or the day following.

On October 24th the plaintiffs' brokers telegraphed plaintiffs to allow inspection quick, but received no answer to this telegram.

On October 25th the plaintiffs' brokers wired the plaintiffs: "If you don't instruct Cloverleaf Railroad allow Longo inspection tonight or in the morning he will refuse car."

On October 27th the brokers wired plaintiffs: "Longo rejects car grapes, could not inspect until late yesterday."

On the 26th of October plaintiffs telegraphed their brokers as follows:

"Car sold f. o. b. Brocton, no inspection promised at sale. Putting matters for collection. Wire shows inspectioin before car arrived."

On October 28th the brokerage firm wired plaintiffs:

"Longo won't take car. Says had car sold, but could not see the grapes for several days. His customer would not wait and bought elsewhere. Wire what shall do."

Before the arrival of the car defendant had sold it to a customer, one Paul Poedeshi, of Kincaid, Illinois, at $80, ton f. o. b. shipping point, which would have yielded defendant a profit of $10 a ton on the shipment. This customer had come to St. Louis and refused to accept the car because of inability to inspect its contents, but waited over for three days in the hopes of being permitted to inspect it, and not being given such opportunity, refused to go on with his contract.

On October 24, 1922, plaintiffs wired to the agent of the Nickle Plate Railroad, St. Louis, Missouri, to allow inspection of the car, but defendant was not notified, and at that time the car had been delivered to the Terminal Railroad Association, and it was not until about 3:30 o'clock p. m., October 26, 1922, that defendant was notified that the contents of the car might be inspected. By this time

it had already lost the sale of the car to Poedeshi, and they thereupon rejected the shipment.

Plaintiffs sued for the damages alleged to have been sustained by them on account of the failure of defendant to accept the shipment, and defendant, by its counterclaim, sought to recover its damages because of the failure of the plaintiffs to permit an inspection and thereby enable defendant to make the sale to its customer.

At the close of plaintiffs' evidence defendant asked a peremptory instruction that the plaintiffs were not entitled to recover on their cause of action, which request was denied by the trial court.

The jury returned a verdict for plaintiffs on their cause of action and also on defendant's counterclaim, and this appeal is from the judgment rendered upon said verdict.

Granting that plaintiffs adduced testimony tending to prove that under the agreement in writing entitled, "Standard Confirmation of Sale," the phrase, terms net cash payable, "regular" meant and was understood by the well established use and custom existing at the time of the execution of said agreement and of which both parties had knowledge at the time said agreement was entered into, that the sale was made for cash, the goods to be shipped f. o. b. car at Brocton, New York, on a bill of lading issued by the carrier to the order of plaintiffs at St. Louis, Missouri, notify M. Longo Fruit Company, and attached to sight draft for the purchase price drawn on defendant at St. Louis as is alleged in plaintiffs' petition so that assuming without deciding that plaintiffs complied with the contract in shipping the car of grapes under shipper's order, notify bill of lading, yet nowhere in said, "Standard Confirmation of Sale" do we find anything that can be construed as a waiver on the part of the dedendant of its right to inspect before receiving and accepting said shipment, and plaintiffs in their printed agreement concede that, "absent the contract of sale (Standard Confirmation of Sale) the consignee was entitled to inspection before being required to take up the draft." Nor does plaintiffs' amended petition allege any customs under said, "Standard Confirmation of Sale" to the effect that such right of inspection on the part of the purchaser is waived. In this situation plaintiffs were not entitled to adduce any testimony with reference to a custom that where goods are shipped as here under a bill of lading to shipper's order, notify, the purchaser had no right of inspection unless specifically contracted for in the agreement of purchase and sale.

Absent any pleading and proof of a custom that no inspection is to be allowed unless specifically contracted for in the written agreement of purchase and sale, the defendant clearly, under the decisions in this State and elsewhere was entitled to inspection before acceptance.

Plaintiffs concede that they did not mark on the shipper's order notify bill of lading directions to the railroad company to permit inspection on the part of the defendant, and further concede that without such written notification upon the bill of lading the carrier would not permit and did not in fact permit defendant to inspect. We have in mind also that plaintiffs adduced abundant proof that right at the time that the shipment of grapes in question arrived in St. Louis there was a rapidly declining market and yet the defendant for three consecutive days and up to the moment of its rejection was denied the right of inspection.

We find under the facts in this case that even though the defendant be held to have acquiesced by special agreement that the shipment was to be made by bill of lading to shipper's order notify, that the defendant retained its implied right of inspection of quality and quantity prior to being required to accept and pay for said shipment. In a situation such as we have before us what was said in Hunter Bros. Mill Co. v. Stanley, 132 Mo. App. 308, 111 S. W. 869, is germane.

"On a shipment directly to the consignee and delivered to the carrier, there is a delivery to the consignee, but that is not so when the shipment is to the consignor's own order. In the latter instance he does not part with his property. In the former he does, subject to his right of stoppage *in transitu*. By plaintiff's act in this case it was necessary to a delivery to defendant that he should have possession of the bill of lading endorsed by plaintiff and this he could not get without first paying the draft attached. By this means defendant was cut out of the most important right of a vendee in an executory contract of sale. Plaintiff has failed to show a performance of the contract as alleged by itself and cannot be allowed to recover." [See, also, Roaring Fork Potato Growers v. Clemons Produce Co., 193 Mo. App. 653, 187 S. W. 617, and cases therein cited.]

In the absence of directions from the plaintiffs under the bill of lading to shipper's order notify, the railroad company could not and did not grant defendant permission to inspect, and after trying for three entire days to secure the opportunity of inspection, defendant was clearly within its rights to refuse to pay the draft or accept delivery. In support of this ruling we quote from the following cases:

"The authorities cited sustain this proposition that when a vendor sells goods of a specified quality, but not in existence or ascertained, and undertakes to ship them to a distant buyer, when made or ascertained, and delivers them to the carrier for the purchaser, the latter is not bound to accept them without examination. The mere delivery of the goods by the vendor to the carrier does not necessarily bind the vendee to accept them. On their arrival he has the right to in-

220 Mo. App.—36.

spect. them to ascertain whether they conform to the contract, and the right to inspect implies the right to reject them if they are not of the quality required by the contract.'' [Pope v. Allis, 115 U. S. 363, 29, L. Ed. 393, 398.]

''The rule is well settled that, in the absence of an agreement to the effect that the carrier can and does have power to inspect the goods as to quality, the right of inspection rests in the purchaser, who may exercise such right when the goods reach their destination, and may accept or reject the goods according to their compliance as to quality with the conditions of the purchase. The contract between seller and purchaser is so far executory as to reserve the right to the purchaser, even though the carrier be designated by the latter.'' [Schiller v. Blythe & Fargo Co., 15 Wyo. 304.]

''It is true that the goods were to be examined and the price remitted at once, if found correct; but the agreement was silent as to this inspection being with a view to a change of ownership. The right to inspect before acceptance always exists, and a purchaser cannot be required to inspect at the shipping point, but is entitled to a reasonable opportunity after the arrival of the goods. [Kuppenheimer v. Wertheimer, 107 Mich. 77.]''

''On such a sale of goods it is a condition implied by law that the buyer shall have a fair opportunity of examining the goods to satisfy himself that they are in accordance with the contract.'' [McNeal v. Braun, 53 N. J. L. 617.]

''So that it is manifest from the testimony that there was no time or place of inspection or acceptance agreed upon by the parties, or for the payment of the purchase price. The payment therefore became due and payable on a complete delivery, and there could be no such delivery without an opportunity for inspection. Under an executory contract for the future sale and delivery of goods of a specific quality, the quality is a part of the description, and the seller is bound to furnish goods actually complying with such description. If he tenders articles of inferior quality the vendee is not bound to accept them; and, unless he does so, he is not liable therefor. This necessarily gives to the vendee the right, and, therefore, imposes upon him the duty, of inspection, and he must, therefore, be given an opportunity to make such inspection before becoming liable for the purchase price, unless the contract otherwise provides; and whether articles are to be delivered to a common carrier by the vendor to be forwarded to the vendee at a distant point, and no provision is made for inspection and acceptance before or at the time of shipment, the vendee is entitled, under the law, to a reasonable time after the goods arrive at their destination in which to exercise the right of inspection and to accept or reject them if they do not comply with the contract.'' [Eaton v. Blackburn, 52 Ore. 300.]

"There is no dispute as to the rule of law touching the rights of parties under an executory contract for the future sale and delivery of goods of a specified quality, in the absence of express warranty. The quality is a part of the description of the thing agreed to be sold, and the vendor is bound to furnish articles corresponding with the description. If he tenders articles of an inferior quality, the purchaser is not bound to accept them. But if he does accept them, he is, in the absence of fraud, deemed to have assented that they correspond with the description and is precluded from subsequently questioning it. This imposes upon the vendee the duty of inspection before acceptance, if he desires to save his rights in case the goods are of inferior quality. There is in such case no warranty of quality, · which survives acceptance, and the vendee cannot reject the goods after acceptance or recover damages for inferior quality. He can do nothing inconsistent with the right of rejection, or do what is only consistent with acceptance and ownership without precluding himself. . . .

"The general rule is stated in Benjamin on Sales. In section 701 the author says: 'The buyer is entitled, before acceptance, to a full opportunity of inspecting the goods to see if they correspond with the contract.' " [Pierson v. Crooks, 115 N. Y. 539.]

The case of Gifford v. Wellman, 187 Mo. App. 29, 173 S. W. 53, is in point here. There the plaintiff agreed to sell and deliver to defendant, at St. Joseph, Missouri, a carload of cantaloupes. The shipment was made by shipper's order with draft attached, but there was a delay in forwarding the bill of lading, and not having possession of the bill of lading the defendant was unable to inspect the contents of the car for several days thereafter. Defendant refused to pay the draft, because of the delay and the condition of the melons, and the court held defendant was within its rights in rejecting the shipment in an opinion, in the course of which it said on page 36:

"Defendant introduced evidence, without objection, that the car was to be delivered subject to inspection by the purchaser, and that such was the general custom of those in that business. But without this, as the goods were not present when the contract was made and there was to be a future delivery at a certain place, the right of inspection was implied."

In the recent case of N. W. Helm Feed & Coal Co. v. Butler County Milling Co. (Mo. App.), 269 S. W. 630, where the merchandise was consigned directly to the buyer, the court said:

"In considering this question we recognize as correct appellant's statement that the title to the corn passed to respondent when the car was loaded f. o. b. the cars at Caruthersville, Missouri. The railroad company was the agent of the purchaser to the extent of vesting the purchaser with title upon delivery of the shipment to it;

but the carrier was not the agent of the purchaser for the purpose of inspection. [Bloom's Son v. Hass, 130 Mo. App. 122, 108 S. W. 1078.]

"In so far as the purchaser in this case was concerned, there was no inspection at the point of shipment and none contemplated. That being true, if the right of inspection at the point of destination were denied, then the purchaser would be bound to accept the shipment no matter how inferior the corn may have been. The right to inspect the goods at destination within a reasonable time is generally implied in the absence of any provision in the contract to the contrary. This is true, although the legal title to the goods may have passed to the purchaser by delivery to the carrier at the point of shipment."

In light of the authorities we rule, under the facts and circumstances of the case, the contract being silent as to the right of inspection, the consignee had a right to inspect before acceptance and since the right of inspection was denied, the consignee had the right to reject. It follows that in our view the trial court, under the conceded facts in the case, should have sustained defendant's demurrer offered at the close of the whole case. It follows that the judgment should be reversed. It is so ordered. *Daues, P. J.,* and *Nipper, J.,* concur.